495 A.2d 527

COMMONWEALTH of Pennsylvania, Appellee,

v.

George B. GOINS, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1985.

Decided July 11, 1985.

Marlene S. Cooperman, Philadelphia, for appellant.

Robert B. Lawler (Chief/Appeals), Gaele M. Barthold (Chief/Pros.), Alan Sacks (Asst. Dist. Atty.) Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This appeal from the first degree murder conviction of the Appellant George B. Goins comes to this Court directly from the Court of Common Pleas of Philadelphia County, the jury having decided upon, and the court having imposed, the sentence of death, 42 Pa.C.S. § 9711(h); Pa.R.A.P. 1941. Jurisdiction is vested with this Court pursuant to 42 Pa.C.S. § 722(4).

■ Although the Appellant has not in this appeal challenged the sufficiency of the evidence, this Court has an independent obligation in all capital cases to determine that the evidence is sufficient to prove murder of the first degree. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982) (reargument denied); *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Viewing the evidence in light most favorable to the Commonwealth, it was established that on the night of June 22, 1981, the Appellant's wife, Susan Goins, visited with some friends at the house of Cheryl Landers. Around midnight she telephoned her husband to tell him she would be on her way home soon, although she did not mention to him where she was. At around 1:45 a.m., June 23, Susan Goins left Landers's house. Before she left, Landers wrote down for her the new telephone number Landers had recently been given. Between 3:00 and 4:00 a.m., Landers received a telephone call from the Appellant, inquiring whether his wife was with her. Also at about 3:00 or 4:00 a.m. on June 23, 1981, Gertrude Watson, who lived in the row house neighboring the Appellant and his wife, heard arguing, screaming, and the sound of something falling, coming from the Goins residence.

Around 5:00 a.m., although he was not scheduled for work until 7:00, the Appellant was seen at his place of

employment, a home for retarded children, wearing blood covered clothing. It was later discovered that a medicine cabinet at the home had been broken into that morning. The Appellant was discovered semi-conscious by his mother in her home late in the afternoon, having ingested various drugs. He was taken to the hospital by the police, who had been called by the Appellant's mother.

The following day, June 24, Susan Goins's body was found, a claw hammer embedded in her skull, by her brother-in-law, the Appellant's brother, who had a key to the house. The police investigation of the house revealed no sign of forcible entry or theft. Medical examination determined that Susan Goins had been struck in the head with the hammer about twenty-five times; in addition numerous other bruises and scratches to the shoulders and arms were found.

The Appellant's defense rested largely upon his own testimony that his wife had not yet arrived home when he phoned Cheryl Landers; that he went to the subway station to meet his wife and accompany her home; and that when he returned he found his wife's body and was so distraught that he went to his work place where he attempted suicide by ingesting drugs. He explained the blood on his clothing as resulting from his actions in hugging his wife's body and trying to remove the hammer.

The jury clearly disbelieved the Appellant's version of the events and, as was its province, credited the testimony of the Commonwealth's witnesses. There can be no doubt that this evidence is sufficient to prove that the Appellant acted with premeditation and specific intent in killing his wife.

The Appellant's allegations of trial error are limited to two instances of what is characterized as misconduct by the prosecutor. The first of these instances occurred during defense counsel's closing argument to the jury. The prosecutor interrupted counsel's argument that the Commonwealth had failed to produce witnesses to rebut certain

of the defendant's testimony, stating to the court and the jury that defense counsel was "making misstatements." In addition to being patently frivolous, this argument is waived. Defense counsel objected to the interruption by the prosecutor and the court admonished the Commonwealth's attorney against further interruptions. No motion for mistrial was made. Defense counsel received the only relief he requested and the only relief to which he was entitled.

■ The second instance of misconduct complained of occurred during the prosecutor's closing argument to the jury. The Appellant cites two statements which he argues were direct or indirect statements of the prosecutor's opinion that the Appellant had killed his wife. In the first instance the prosecutor stated, "If you believe Gertrude Watson, this man [the Appellant] is not telling the truth. You decide that. That's your job. I can't give you my opinion. I can't say it." N.T. 5.234. It is difficult to discern in what regard this statement is objectionable, Watson and the Appellant having given contradictory testimony on the facts being addressed. In any event, the issue is waived for failure of trial counsel to object.

■ Also cited as prejudicial misconduct in the prosecutor's closing is the following statement:

The defendant himself said that one time she took pills. He called the police and he rushed her to the hospital.... What is the difference between the first time, when he found her dying, according to him, and the second time, when he found her dying? I tell you what the difference is. The difference is the second time he did it.

N.T. 5.252–53. Defense counsel's objection to this statement was overruled. Accepting the Appellant's argument that this was an improper statement conveying the prosecutor's opinion regarding the accused's guilt, it is not every intemperate remark which will result in the grant of a new trial. Only those remarks whose "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias

and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict" will necessitate the ordering of a new trial. *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). The trial court's determination that the conduct complained of did not reach the level requiring a new trial is more than amply supported and cannot be characterized as an abuse of discretion.

The Appellant also argues that he is entitled to a new trial for the reason that his trial counsel failed to provide him with effective assistance. Two claims of inadequate representation are based on trial counsel's failure to call witnesses. The first of these witnesses, Appellant argues, would have testified that he had been awakened in the early morning of June 23, 1981 by screams coming from the back bedroom of the Goins residence, that at the time he heard the screams the bedroom window was closed, and that later he noticed that the window was open. According to the Appellant's argument, this testimony would have supported the defense theory that an unknown burglar had entered the house, killed Susan Goins, and exited by way of the window. In view of the defendant's testimony that he had left the front door of the house open when he went to meet his wife at the subway station, and the testimony that there were no signs of theft or forcible entry, the implausibility of the argument that an unknown burglar had entered and exited by way of a second floor window is so great that trial counsel's failure to present a witness to support it cannot be deemed ineffective. Moreover the witness's testimony as to the screams and other noises he heard would have corroborated the testimony of other witnesses as to these facts. Counsel could well have decided not to present a witness whose testimony would have done more harm than good.

The other witnesses who should have been presented according to the Appellant would have testified that several months prior to the killing the Appellant had fractured his right thumb. This evidence, it is argued, would have gone toward establishing that the Appellant was unable to use

his right hand on the day of the crime. In addition to the fact that at least two points of the Appellant's own testimony indicated that he was able to use his right hand (the Appellant testified that he tried to remove the hammer from his wife's head with his right hand, yanking with sufficient force to splatter blood on his clothing), trial counsel testified at the evidentiary hearing that he had tried to grip a hammer and found that he did not need his thumb, even for landing blows such as those suffered by Susan Goins. We must agree with counsel's assessment that the argument which might have been developed from these two witnesses' testimony was "incredible and fantastic" and that "we would be laughed out of court with that." Failure to pursue such a line of defense was clearly not ineffective.

■ The Appellant also challenges the adequacy of trial counsel's representation for failure to introduce evidence argued to be exculpatory. The evidence in question is an eight page F.B.I. report indicating that the latent fingerprints and palm prints lifted from the scene of the crime were not those of the Appellant. This claim must fail because the Commonwealth presented two fingerprint experts, one a Philadelphia police officer, the other an employee of the F.B.I., who testified that some of the fingerprints at the scene were from Mrs. Goins, while others did not match either the victim or the Appellant. The entry of the report on which this testimony was based would merely have been cumulative. Although the absence of the Appellant's prints might have supported the defense theory that the Appellant was not the murderer, that theory would not have been furthered or strengthened by such duplicative evidence. Accordingly, counsel cannot be deemed ineffective for having failed to introduce it.

■ Counsel is also argued to have provided ineffective assistance for failing to request a continuance in order to obtain an expert witness to rebut the testimony of the forensic scientist presented by the Commonwealth. Professor Herbert MacDonnell testified for the Commonwealth that the pattern of blood stains splattered about the house

and on the decedent's clothing were consistent with her having been slain with great force. He also testified that the pattern of the stains on the Appellant's clothes was inconsistent with the Appellant's statement that the stains were caused by his hugging his wife's dead body. Defense counsel first became aware that MacDonnell would testify for the Commonwealth during the course of the trial, although he did have the opportunity to interview MacDonnell prior to his direct testimony to discover what the substance of that testimony would be. At the evidentiary hearing counsel explained that he attempted to counter MacDonnell's testimony solely by cross-examination, questioning his credentials, raising the issue of his fee, and bringing out that MacDonnell's testimony was based on photographs, not direct observation of the scene. Counsel attempted to discount the opinion of the Commonwealth's witness by suggesting that the jurors were as capable of drawing their own opinions from the photographs, and that it was somewhat ridiculous for an expert to claim that he could form such a detailed, definitive opinion on such a flimsy basis. That this method of impeachment was unsuccessful does not indicate that counsel was ineffective for pursuing it. The Appellant offers no indication that there even exists another forensic scientist capable of examining the pattern of blood stains, let alone that such an expert would have contradicted MacDonnell's testimony. Without a showing that a continuance would have materially aided counsel in rebutting the testimony of the Commonwealth's witness, we are unable to find counsel's representation inadequate for failing to request a continuance.

The final claim of ineffective assistance of counsel is based on the stipulation to the admissibility of photographs of the scene of the crime. These black-and-white photographs included one showing the hammer in the victim's head. While we have consistently recognized the inflammatory potential of unduly gruesome photographs, see e.g. Commonwealth v. Edwards, 493 Pa. 281, 426 A.2d 550 (1981), and under other circumstances some or all of the

photographs now found objectionable might have been deemed inadmissible, in the context of this trial defense counsel cannot be considered ineffective for allowing them to be admitted. The entire defense theory of the case was that the Appellant returned to his house, found the battered body of his wife lying in the bedroom, blood on the floors and walls all around, and was in such a state of shock that he decided to take his own life by an overdose of pills. It was part of the strategy to impress upon the jury how grisly the scene was so that they might better understand the Appellant's reaction, as well as how the Appellant could have gotten blood on his clothing. Thus, within the context of the defense presented, counsel had a rational reason for stipulating to the admission of the photographs. He cannot be faulted simply because this strategy proved unsuccessful. *See Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973) (no harm from brief showing of nude photographs of victim, especially as they meshed with the defense presented).

Having found no trial error which warrants the grant of a new trial, we must review the penalty imposed and "either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence." 42 Pa.C.S. § 9711(h)(2). We must affirm the sentence unless we find that it was "the product of passion, prejudice or any other arbitrary factor," that "the evidence fails to support the finding of an aggravating circumstance," or that the sentence is "excessive or disproportionate to the penalty imposed in similar cases," taking into account the circumstances of the crime and the defendant's character and record. 42 Pa.C.S. § 9711(h)(3).

The only aggravating circumstance argued in this case is specified in 42 Pa.C.S. § 9711(d)(9), "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." The jury determined that the Commonwealth had proven the existence of this circumstance beyond a reasonable doubt and that the Appellant

had not proven the existence of any mitigating circumstances by a preponderance of the evidence.

The Appellant challenges the sentence imposed on this finding of aggravating circumstance (9) in several respects, arguing that the statute is unconstitutionally vague and fails to provide sufficient guidance to channel the jury's discretion, and that the trial court's instruction on this aggravating circumstance was erroneous.

In *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984), this Court rejected a "void-for-vagueness" challenge to 42 Pa.C.S. § 9711(d)(9) and dismissed as "frivolous" the contention that "two prior murder convictions are insufficient to constitute a 'significant' history of felonies involving violence to the person," 505 Pa. at 286 n. 4, 479 A.2d at 464 n. 4. We find nothing in either the arguments advanced or the additional case cited (*State v. David*, 468 So.2d 1126 (La.1984)) which persuades us that this holding was erroneous. Accordingly the Appellant's constitutional challenge is rejected.

The Appellant's challenge to the trial court's instruction and the related argument that the aggravating circumstance was improperly applied in this case pose a more difficult issue. The question presented is whether a single felony conviction for a crime of violence may suffice to establish a "significant history" under 42 Pa.C.S. § 9711(d)(9). After careful review, we conclude that it may not.

Prior to the commencement of the Appellant's sentencing hearing an *in camera* discussion was held during which it was established that 42 Pa.C.S. § 9711(d)(9) was the only aggravating circumstance which could conceivably be applied to this case. Trial counsel objected to submitting this factor for the jury's consideration, arguing that one prior conviction [1] as a matter of law could not constitute a "sig-

---

**1.** It was stipulated that the Appellant had been convicted of murder, at the time graded as second degree murder under 18 P.S. § 4701, the present equivalent of third degree murder, 18 Pa.C.S. § 2502(c). This

nificant history." The court overruled the objection and instructed the jury as follows:

> Now, although the words, "felony convictions" appear in what I have just told you, I want you to know that one felony conviction could be sufficient under the law, providing, of course, that it involved the use of violence to the person or the threat of violence to the person.

N.T. (April 15, 1982) at 107. In explaining the charge and the ruling on the objection, the court cited the Rules of Construction, particularly 1 Pa.C.S. § 1902, which provides in relevant part that "[t]he singular shall include the plural, and the plural, the singular." The court also observed that "[i]n ascertaining the intention of the General Assembly in the enactment of a statute, the following presumption[ ] . . . may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable." 1 Pa.C.S. § 1922. For the court it was

> . . . inescapable that the Legislature intended to include a single prior felony conviction which involved the "use or threat of violence to the person." We cannot believe that the Legislature envisioned the death penalty for a defendant convicted for example of two prior aggravated assaults or robberies but shielded a defendant from the electric chair where he had been convicted of a prior murder.

Opinion Sur Denial of Post-Trial Motions at 3.

We are not convinced that this contrast drawn by the lower court is instructive on the intended meaning of aggravating circumstance (9). The perceived disparity would only become a real disparity if the death penalty were *always* imposed in the former case but never in the latter. It cannot be ignored, however, that the relatively minor character of prior felonies is admissible toward establishing mitigating circumstances, *see* 42 Pa.C.S. § 9711(e)(8). More importantly given this Court's independent examination to determine whether "the sentence of death is excessive or

conviction was the only evidence offered on behalf of the Commonwealth to establish aggravating circumstance (9).

disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant," 42 Pa.C.S. § 9711(h)(3)(iii), the potential incongruity of several "lesser" felonies constituting a "significant history" while a single "major" felony did not, becomes of no *practical* effect. These procedural safeguards prevent the imbalance which the lower court perceived as an "absurd result" which the General Assembly would not have intended. The construction of the statute adopted by the court to avoid this imbalance carries less weight in ascertaining the legislature's intent.

The manner of the lower court's application of the "singular/plural" rule of construction cannot be faulted; indeed the rule is mechanically applied in all instances and by itself can shed no light on the intended scope of the statute. The court, however, overlooked the applicability of another rule of construction from which can be derived some understanding of legislative intent. "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." 1 Pa.C.S. § 1903. Following this precept, it is important to note that the statute reads "a significant history of felony convictions" rather than "a history of significant felony convictions." The pertinent rule of grammar to be followed is that that modifier should be placed, if possible, next to the word to be modified. If the legislature had intended that the seriousness of the prior felonies be the measure of the aggravating circumstance, the latter construction would have been correctly used. The use of the former construction instead clearly demonstrates the intention that it be the defendant's "history" of felony convictions which is "significant." In this context it appears that the plural form "convictions" is intentionally used to the exclusion of the singular form "conviction."

The limited record of the legislative consideration of this provision supports this interpretation. Senator O'Pake, in a prepared statement made a part of the record, explained the

inclusion of aggravating circumstance (9) by the conference committee in the following terms: "It was felt by the conference committee that a murderer who has previously committed *a number of violent crimes*—such as rape—and been convicted of them—has the kind of record that should be considered an aggravating circumstance and that such a person should be subject to the death penalty." 1978 Legislative Journal—Senate at 722. (Emphasis added) It may also be noted that the Senate had previously rejected an amendment to the death penalty statute which included as an aggravating circumstance that "[t]he defendant was previously convicted of *another* murder or *a* felony involving the use or threat of violence to the person." 1978 Legislative Journal—Senate at 103 (Emphasis added).

The first of the rules of construction set out in the statute is that the other "rules set forth in this chapter shall be observed, unless the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly." 1 Pa.C.S. § 1901. Because we find it to have been the manifest intent of the General Assembly to include as an aggravating circumstance more than one prior violent-felony conviction, it was error for the trial court to apply the "singular/plural" rule of construction of 1 Pa.C.S. § 1902 which resulted in an inconsistent interpretation of 42 Pa.C.S. § 9711(d)(9). Under this analysis, "the evidence fails to support the finding of an aggravating circumstance specified in subsection (d)." 42 Pa.C.S. § 9711(h)(3)(ii). Accordingly, we vacate the sentence of death and remand the record to the Court of Common Pleas of Philadelphia County for the imposition of a sentence of life imprisonment.

HUTCHINSON, J., joins in the majority opinion and files a concurring opinion.

LARSEN, J., files a concurring and dissenting opinion.

PAPADAKOS, J., files a concurring and dissenting opinion.

McDERMOTT, J., did not participate in the consideration or decision of this case.

HUTCHINSON, Justice, concurring.

I join in the majority opinion. It correctly holds that aggravating circumstance (d)(9), a "significant history of felony convictions involving use or threat of violence" (42 Pa.C.S. § 9711[d][9]), will not be triggered by a single such conviction. Any other interpretation would render 42 Pa. C.S. § 9711(d)(10) superfluous. I write separately, however, to point out that the single prior conviction involved in this case (the present equivalent of third-degree murder) satisfies the qualitative aspect of the statutory phrase "significant history" because of its close similarity to the conduct which resulted in the victim's death in the present case. In short, this appellant has shown that he is prone to kill under certain particular circumstances, but has not done so often enough to meet the legislative definition of "significant history."

However, I believe that the dissenters unwisely venture into immaterial speculation when they state that the Legislature did not intend to allow a defendant to commit three murders before a significant history could be established. The hypothetical of three murders is not on point. The Legislature did not define any of the aggravating circumstances which permit a death sentence in terms of "murder." It spoke precisely, as required by the mandates of the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), not in general terms of "murder," but in interlocking terms of "significant history" of felony convictions involving violence or its threat (42 Pa.C.S. § 9711[d][9]), of a single felony for which the penalty is life or death (§ 9711[d][10]), and of a first degree murder committed in the perpetration of a felony (§ 9711[d][6]).

Taken together, these terms are precise enough to distinguish those first degree murders which warrant death from those which do not, and yet comprehensive enough to cover substantially all first degree murders for which society can legitimately demand death. Together they establish the definite, objective criteria which federal constitutional law requires of statutes authorizing capital punishment. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982). The term "murder" as used in the dissent by Mr. Justice Larsen is not a term used by the Legislature. It includes not only first and second degree murder, which could trigger capital punishment after a single conviction under § 9711(d)(10), but also third degree murder, which can be part of the significant history of convictions that authorizes the imposition of capital punishment under § 9711(d)(9). Thus, under the various subsections of § 9711(d), one concurrent conviction for either first or second degree murder will establish an aggravating circumstance, § 9711(d)(10), and two or more prior violent felonies may constitute a history which satisfies § 9711(d)(9). In addition, aggravating felonies which are concurrent with the capital crime or part of the transaction or occurrence which leads up to it are dealt with in § 9711(d)(6). That subsection places no limit on the number or kind of felonies which qualify and thus can be satisfied by a single concurrent felony. All other subsections of § 9711(d) describe circumstances coincident to a first degree murder which so aggravate it that the death penalty is warranted solely on the nature of the killing at bar. To speak in terms of murder generally casts us loose from the statute's constitutional mooring in these precise and interlocking sets of aggravating circumstances. I therefore join the majority on the facts of this case.

I believe it follows that it is wrong to suggest that *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), supports the view that § 9711(d)(9)'s significant history of felony convictions is satisfied by adding the guilty verdict for the first degree murder under sentencing consid-

eration to a single conviction for an unrelated violent felony and that such an interpretation is necessary in order to prevent a felon from committing three murders before he must face a death sentence at a jury's hands. Such a reading does injustice to the legislative intent which led to the concurrent enactment of 42 Pa.C.S. § 9711(d)(10). Under this view, any single conviction for a violent felony would support a jury's finding of the § 9711(d)(9) aggravating circumstance and there would be no need for § 9711(d)(10) and little for § 9711(d)(6). *Travaglia* should not be extended in such a manner.

Moreover, I note that the statute's interlocking terms may cover felonies which do not include any homicide and thus are usually thought of as less serious than third degree murder. Consequently, I believe the emphasis solely on murder is on the one hand more sanguine than the legislative enactment and on the other less so. In short, it encompasses some first degree homicides for which the Legislature did not intend to authorize capital punishment, yet fails to include others upon which it did intend to visit that sanction.

If the Legislature wanted to consider a single prior "murder" significant in and of itself, it could have easily done so. Instead, it enacted subsections limiting the use of a single felony as an aggravating circumstance to those crimes which are punishable by either life imprisonment or death if it is unrelated to the first degree murder at bar, or to a felony concurrent with that first degree murder. None of these definitions include a single third degree murder as such, and, I believe, the distinctions among them must be precisely observed and applied to avoid the vagueness and confusion which the Legislature went to such great pains to prevent. I therefore agree with the majority's interpretation of subsection § 9711(d)(9).

LARSEN, Justice, concurring and dissenting.

If the death penalty is a deterrent, and I believe that it is; and if the death penalty serves the societal need for retribu-

tion, and I believe that it does; and if the death penalty serves the cathartic needs of the survivors of a murder victim, and I believe that it does; and since the death penalty prevents the murderer from murdering again; then the majority today has ignored and frustrated these important objectives and purposes of the Pennsylvania death penalty statute by establishing that a murderer such as appellant must be convicted of murder three times before he will be eligible to receive the death penalty. Surely the Legislature did not intend this result.

As I believe the majority's interpretation of subsection (d)(9), 42 Pa.C.S.A. § 9711(d)(9), thwarts the legislative intent and that the jury in this case properly determined that appellant's two convictions for murder (i.e., the current conviction for murder of the first degree and the prior conviction for murder of the (present day equivalent) third degree) constitutes a significant history of felony convictions involving the use or threat of violence, I dissent to the majority's decision to vacate the sentence of death and remand for imposition of a life sentence. I concur in the affirmance of appellant's convictions.[1]

We have held that the jury may consider, as evidence of the aggravating circumstances specified in subsections (d)(9) and (d)(10), a conviction not yet "final" because the defendant has not been sentenced for that conviction or because his conviction was on appeal. *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983); *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984); *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985). This same principle would permit a jury to consider the

---

1. While not entirely clear from the majority opinion, a post-conviction evidentiary hearing was held before the Honorable Edwin S. Malmed, at which hearing appellant was represented by new counsel who argued the ineffectiveness of trial counsel. The facts pertaining to the allegations of ineffectiveness set forth in the majority opinion adequately demonstrate that appellant has failed to meet his burden of establishing how the witnesses not called and the evidence not introduced by trial counsel would have been beneficial to the defense. *See Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983) *and Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).

murder of the first degree conviction which it has just returned as *part of* a defendant's significant history of violent felony convictions. It requires only a straightforward application of the language of subsection (d)(9) to affirm the jury's finding in this case—*two convictions* for murder surely may constitute a "significant history of felony convictions involving ... violence to the person."

The majority in effect rewrites the statute by insertion of the concept "more than one prior" violent felony conviction into the aggravating circumstance set forth in subsection (d)(9); that is, the majority has interpreted that subsection to read "significant history of more than one prior felony conviction" involving violence to the person.[2] This modification is improper. The legislative history cited by the majority to support its interpretation of subsection (d)(9) actually supports the interpretation that "significant history of felony convictions involving ... violence" includes the conviction for which the defendant has just been tried. The majority notes "that the Senate had previously rejected an amendment ... which included as an aggravating circumstance that '[t]he defendant was previously convicted of *another* murder or *a* felony involving the use or threat of violence to the person.' 1978 Legislative Journal—Senate at 103 (Emphasis added)." 508 Pa. at —, 495 A.2d at 534. The legislature refined the concepts expressed in the *rejected* amendment and, instead, split this proposed aggravating circumstance into two subsections, namely (d)(9) and (d)(10).

The concept of "another murder" was embodied in subsection (d)(10) which states that it is an aggravating circumstance where the "defendant has been convicted of *another*

---

**2.** The majority holds that it was "the manifest intent of the General Assembly to include as an aggravating circumstance more than one prior violent-felony conviction...." 508 Pa. at 284, 495 A.2d at 534. *See also id.,* 508 Pa. at 281–283, 495 A.2d at 533 ("it is important to note that the statute reads 'a significant history of felony convictions' rather than 'a history of significant felony convictions.' The pertinent rule of grammar to be followed is that that modifier should be placed, if possible, next to the word to be modified. If the legislature had intended that the seriousness of the prior felonies be the measure of the aggravating circumstance, the latter construction would have been correctly used.")

Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." 42 Pa.C.S.A. § 9711(d)(10). In contrast, the concept of "a felony involving the use or threat of violence to the person" was finalized as subsection (d)(9) which establishes an aggravating circumstance where the "defendant has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S.A. § 9711(d)(9). Under subsection (d)(10), therefore, the defendant's "current" conviction for murder of the first degree cannot establish that aggravating circumstance because it is not *another* offense for which a sentence of death or life imprisonment is imposable. However, as the final version of the significant violent felony aggravating circumstance contains no similar limiting language (such as "another", "other" or "prior" felony convictions involving violence), the legislature must have considered a defendant's "current" conviction to constitute part of his significant history of felony convictions involving violence.

Further indication that the legislature intentionally omitted the concept of "prior" or "other" from subsection (d)(9) is gleaned from the mitigating circumstance of subsection (e)(1), that the "defendant has no significant history of *prior* criminal convictions." 42 Pa.C.S.A. § 9711(e)(1).[3] Given the rejection of the amendment discussed above (which would have established an aggravating circumstance where the defendant had been *"previously"* convicted of ... a felony involving the use or threat of violence to the person), the use of the language *"another* Federal or State offense" in subsection (d)(10), the use of the language "significant history of *prior* criminal convictions" in subsec-

---

**3.** The majority's interpretation of subsection (d)(9) would also seem to conflict with this Court's recent decision in *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984). In that case, a majority of this Court stated (albeit in dictum) that it was proper for the lower court to leave it to the jury to determine whether or not a defendant with a single prior conviction for robbery could be considered to have "no significant history of prior criminal convictions" under subsection (e)(1).

tion (e)(1), and the conspicuous absence of similar language in subsection (d)(9), I believe it clear that the majority has thwarted the legislative intent by interpreting (d)(9) to read "significant history of *more than one prior felony conviction* involving ... violence", in place of "significant history of felony convictions involving ... violence." [4]

Finally, this Court is required to review each sentence of death to determine whether it is "excessive or disproportionate to the penalty imposed in similar cases". 42 Pa.C. S.A. § 9711(h)(3)(iii). To that end, we have directed the Administrative Office of Pennsylvania Courts to compile and monitor an on-going, comprehensive death penalty study dealing with all aspects of cases of murder of the first degree. *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, 707–08 (1984), *cert. denied* —— U.S. ——, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). This study greatly facilitates

---

**4.** Moreover, the majority errs in rejecting the lower court's application of the 'singular/plural' rule of construction. The majority rejects this unambiguous rule of construction based upon some perceived "pertinent rule of grammar" which dictates, apparently, where "modifiers" must be placed, and the consequences of such placement. Such construction of the statute by resort to perceived rules of grammar *see* note 2, *supra* (for which rule no authority, source or reference is given) highlights the concern expressed in the Commonwealth's brief in this case:

> [D]efendant argues that the word "convictions" clearly reveals the Legislature's intention to require a history of at least two convictions. In his post-verdict opinion, Judge Malmed made short work of this argument. Judge Malmed pointed to the governing rule of statutory construction, 1 Pa.C.S.A. § 1902, which provides that "the singular shall include the plural, and the plural the singular." The reason for this rule is obvious; in common English usage, it is often awkward to use one form or the other. To assure that the most understandable phrasing would not result in wooden, semantical arguments over the intended meaning of such passages, the Legislature enacted Section 1902. Defendant's attempt to read the death penalty statute as though § 1902 did not exist represents the very sort of stilted statutory interpretation the Legislature sought to avoid.

Brief for Appellee at 8. Rather than indulge in such artificial, semantical arguments over placement of modifiers to arrive at the intended meaning of "significant history of felony convictions involving ... violence," I would leave it to the common sense and wisdom of the jury to determine whether a murderer's record reveals such a significant history as to warrant the death penalty.

our obligation to ensure that the death penalty sentencing procedures achieve their purpose of limiting and channeling the discretion of the sentencer so as to minimize the risk of arbitrary and capricious sentencing. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2741 (1983). Should our review disclose an arbitrary and capricious result in cases dealing with the aggravating circumstance of subsection (d)(9),[5] this Court would then determine whether the application of the circumstance "significant history of felony convictions involving ... violence to the person" is constitutionally infirm.

For the foregoing reasons, I would hold that, for purposes of subsection (d)(9), the jury (or judge) may consider the defendant's contemporaneous conviction for murder of the first degree as part of his or her "significant history of felony convictions involving the use or threat of violence", and I would affirm the sentence of death based thereon.

PAPADAKOS, Justice, concurring and dissenting.

Our Court is unanimous in its affirmance of the conviction of Appellant of murder of the first degree. His history now includes the criminal taking of the lives of two innocent human beings. This history is now undeniable fact. The jury considered this historical fact and determined that it constituted a significant history of felony convictions involving the use or threat of violence and, finding no mitigating circumstances to outweigh this aggravating circumstance, determined that Appellant be sentenced to death. Nothing is clearer in my mind than the correctness of the verdict and sentence in this case having been reached within the guide-

5. As of June 4, 1985, there have been twenty-seven convictions of murder of the first degree wherein the aggravating circumstance of significant history of felony convictions involving violence had been presented to the jury. Twenty-one of those cases resulted in the imposition of the death penalty. My review of the data compiled in those cases indicates neither excessiveness nor disproportionality but, rather, individualized determinations tailored to the circumstances of the offenses and the character of the defendant. In short, the aggravating circumstance of subsection (d)(9) has served its function of limiting and channeling the discretion of the sentencer to avoid arbitrary and capricious sentencing.

lines and mandates of the Pennsylvania Death Penalty Statute.

Yet, the battle lines have been drawn on our Court and we are engaged in logo-polemics over the "interpretation" of subsection (d)(9), 42 Pa.C.S. § 9711(d)(9), which reads, "(9) The defendant has a significant history of felony convictions involving the use or threat of violence to the person."

My brethren concentrate on the word "convictions". They labor over its meaning. They query: Did the legislature mean one conviction? Did it mean more than one conviction? Does it include the latest conviction?

The legislature has used the present tense "the defendant *has* (not *had*) a significant history" thus belieing any temporal restriction to a period before the latest conviction. The legislature uses the plural "convictions" for ease of expression. How stilted it would be to say, "the defendant has a significant history of a felony conviction." Yet, the legislature has said exactly that, in better language, in aggravating circumstance (10).

I can see nothing in the sentence used by the legislature which expressly or inferentially excludes from a jury's consideration any of defendant's felonious endeavors which involve the use or threat of violence to the person. I believe that the essence of this aggravating circumstance is the *significance* that can be attached to a defendant's history of convictions.

In his Concurring Opinion, Mr. Justice Hutchinson correctly points out that the history cannot be significant "unless that history involves more than one such conviction." He further points out that a single prior conviction "plainly satisfies the qualitative aspect of the statutory phrase 'significant history' because of its close similarity to the conduct which resulted in the victim's death in the present case." For example, if a person heinously butchers his paramour and is tried and convicted of third degree murder, then, five years later, heinously butchers a second

paramour and is tried and convicted of murder of the first degree, in the absence of mitigating circumstances, such person has surely established a "significant history", satisfying aggravating circumstance (9) and a jury would be warranted in determining that a sentence of death should be imposed. We must never lose sight of the fact that the jury could exercise its discretion in this hypothetical case and refuse to determine that a sentence of death be imposed. This discretionary aspect in aggravating circumstance (9) is what differentiates it from aggravating circumstance (10) which permits no exercise of discretion. Once it is established that the defendant has committed a felony for which a sentence of life imprisonment or death is imposable, "the verdict must be a sentence of death" in the absence of mitigating circumstances. 42 Pa.C.S. § 9711(c)(iv).

For the foregoing reasons, as well as the rationale set forth in the Concurring and Dissenting Opinion of Mr. Justice Larsen, I dissent to the decision of the majority to vacate the sentence of death and remand for the imposition of a life sentence. I concur in the affirmance of Appellant's convictions. I would call upon the legislature to re-examine the issue and make the necessary amendments if it is found that the majority has misinterpreted the legislative intent.