660 A.2d 1316

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Roy L. WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1994.

Decided June 20, 1995.

88

Richard E. Johnson, for Roy L. Williams.

Catherine Marshall, Ronald Eisenberg, Norman Gross, for Com.

Robert A. Graci, for Atty. General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

CASTILLE, Justice.

Following a three day jury trial, appellant was found guilty of first degree murder [1] and possession of an instrument of crime [2] in connection with the shooting death of James P. McDonnell. Following the penalty hearing, the jury found one aggravating circumstance [3] and no mitigating circumstances. After weighing the aggravating and mitigating cir-

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 907.

3. The jury found that appellant had a significant history of felony convictions involving the use or threat of violence to the person. 42 Pa.C.S. § 9711(d)(9). Specifically, on July 20, 1985, appellant was arrested and charged with robbery, criminal conspiracy and related offenses. On July 24, 1985, appellant was again arrested and charged with robbery, criminal conspiracy, and related offenses. Appellant pleaded guilty in the Court of Common Pleas of Philadelphia County to both robberies, which were third degree felonies and to the conspiracy charges. On August 10, 1985, appellant was arrested and charged with a third robbery, aggravated assault, criminal conspiracy, forgery, unlawful use of credit cards, and related offenses. Appellant again pleaded guilty in the Court of Common Pleas of Philadelphia County to the robbery charge, which was a first degree felony, and he also pleaded guilty to forgery and unlawful use of credit cards.

On July 11, 1990, after the murder in question was committed, but before trial in the instant case, appellant pleaded guilty in Suffolk County Massachusetts, to manslaughter, assault and battery with a dangerous weapon, assault with intent to commit robbery and robbery. Appellant's manslaughter conviction involved the beating death of Christopher Shealey on May 6, 1988. Appellant's assault and battery with a dangerous weapon, assault with the intent to commit robbery and robbery convictions pertain to appellant's holdup of Gary Lewis where appellant, armed with a shotgun, robbed Lewis of $100.00.

cumstances the jury set the penalty at death.[4] Postverdict motions were argued and denied and the trial court imposed upon appellant the jury's sentence of death. This automatic direct appeal to the Pennsylvania Supreme Court followed.[5] For the reasons expressed herein, we affirm the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County.

In all death penalty cases, our inquiry must first begin with an independent review of the sufficiency of the evidence on the first degree murder charge even where, as here, appellant does not challenge the conviction on that basis. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). When reviewing a sufficiency of the evidence claim, an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Thomas,* 527 Pa. 511, 513, 594 A.2d 300, 301 (1991).

In first degree murder cases, the Commonwealth must prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Mitchell,* 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). Specific intent to kill can be inferred by the use of a deadly weapon upon a vital body part. *Commonwealth v. Butler,* 446 Pa. 374, 288 A.2d 800 (1972).

Here, the relatively brief evidence at trial established that appellant and three friends Michael Easley, Holly Boone and

---

4. The trial court imposed no further penalty for appellant's 18 Pa.C.S. § 907 conviction.

5. *See,* 42 Pa.C.S. 722(4); 9711(h)(1); Pa.R.A.P. 702(b) & 1941.

Paula Bowens,[6] visited another friend, Keesha Bell, at Bell's mother's house. Appellant, Michael Easley, Holly Boone and Paula Bowens left the Bell home and walked to an arcade where they played several games and left shortly thereafter. As the four walked down Foulkrod Street, James McDonnell, a twenty-nine year old white male stranger, turned onto Foulkrod Street from Tackawanna Street and walked towards appellant and the others. As James McDonnell neared, appellant, without warning, reached into his coat, pulled out a hand gun, which all three witnesses described as a revolver or "cop gun," and repeatedly shot Mr. McDonnell. Mr. McDonnell was pronounced dead of gunshot wounds to the head, chest and leg, which included vital organs.

■ Michael Easley testified on direct examination that prior to the murder while at the Bell residence, he and appellant were "getting high" in the kitchen and that appellant told him that he was going to kill a white "dude" and that shortly after witnessing the shooting, he and appellant returned to the Bell residence where Easley heard appellant tell other people in the house that he had just shot a "white boy." Holly Boone witnessed the shooting and testified that while she was speaking to Keesha Bell, she overheard appellant telling Michael Easley that he was going to kill a white person. Paula Bowens witnessed the shooting and testified that appellant told her that he was recently released from jail and that "he was going to kill the first white man he saw." Viewed in the light most favorable to the Commonwealth as verdict winner, clearly, this evidence was sufficient to sustain appellant's convictions for first degree murder and possession of an instrument of crime.

■ Having concluded that the evidence is sufficient to support the verdict, appellant raises three claims of error before this Court which will be addressed seriatim. At the outset, it is significant to note that appellant's counsel failed to

---

6. Paula Bowens and Holly Boone were twelve and fourteen years old, respectively, at the time of the shooting. The record does not reveal Michael Easley's age. Appellant was twenty-four years old at the time of the shooting.

object at trial to any of the errors that are now asserted as basis for relief. While we have recognized that waiver rules are often relaxed in capital cases, *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we have held in other capital cases that issues not raised before the trial court were waived. *See Commonwealth v. Goins,* 508 Pa. 270, 276, 495 A.2d 527, 530 (1985) (plurality) (appellant's claims of prosecutorial misconduct are waived for trial counsel's failure to object); *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) (even though issue of whether exclusion of prospective jurors was of constitutional dimension, the issue was waived because defense counsel indicated he had no objection to the challenges for cause of the two jurors), *citing, Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984) (whether prospective jurors were improperly excluded is waived and cannot be addressed for the first time on appeal because trial counsel failed to object to the challenge of prospective jurors or to rehabilitate them through further questioning). This Court does not countenance trial counsel intentionally sitting by silently at trial only later to complain of trial errors on appeal after an unfavorable verdict. That a matter is a death penalty case in no way relieves trial counsel of the duty to raise appropriate contemporaneous objections at trial to allow the trial court to cure any alleged error as well as preserve issues for appellate review.

Nevertheless, appellant's first claim is that he is entitled to a new trial based upon the testimony of Commonwealth witness Paula Bowens regarding appellant's statements just prior to the murder where he indicated that he had been previously incarcerated. Appellant claims that this evidence deprived him of a fair trial because from this testimony the jury could infer that he had committed another crime for which he received a sentence of incarceration. On direct examination, Paula Bowens testified, in pertinent part:

Q: ... Tell us what happened in your own words.

A: Humm, Mike Easley and Roy were in the kitchen talking.... And me and Holly was going to leave, was going to the arcade on Mulberry Street, 4th and Mulberry Street. They said they was going to come along with us. So, we went to an arcade and Roy said he just got out of jail. The first white man he see he was going to kill.

(N.T., 1/29/92, Vol. 1, p. 36–37).

The Commonwealth made no further inquiry and the witness offered no further testimony which referred to appellant's incarceration. Moreover, no other evidence was introduced at trial that indicated that appellant was incarcerated as a result of having been convicted of another unrelated crime.

At the outset, appellant's counsel failed to object to this testimony at trial. However, appellant's counsel then utilized this now challenged testimony in an attempt to impeach the witness's testimony on direct that she had seen appellant throughout the year before the murder with her testimony that appellant stated that he was recently released from jail. On cross-examination, appellant's counsel asked Paula Bowens the following questions:

Q: But you never had any problems with him did you?

A: No.

Q: And that was for a whole year?

A: Right.

Q: All right. Now, when you were going to the arcade, you said Mr. Williams told you that *he had just got out of jail;* he's going to kill the first white man he saw. Were those his exact words?

A: Yes.

Q: And he told you *he had just gotten out of jail?*

A: Yes.

Q: But you had seen him around for a year, hadn't you?

A: Well, I, would you believe [sic] go to the project every day like this [sic] and the house.

(N.T., 1/29/92, Vol. 1, pp. 55–56) (emphasis added).

Thus, counsel's tactical decision to employ the now challenged evidence should prohibit his complaint that the trial court erred by failing to *sua sponte* exclude the evidence.

Admissibility of evidence is a matter addressed to the sound discretion of the trial court, which may only be reversed upon a showing that the court abused its discretion. *Commonwealth v. Claypool,* 508 Pa. 198, 203–204, 495 A.2d 176, 178 (1985). Evidence of a defendant's prior arrest or incarceration is generally inadmissible because the trier of fact may infer past criminal conduct by the defendant from such evidence. *Commonwealth v. Tomoney,* 488 Pa. 324, 333, 412 A.2d 531, 535 (1980) (citation omitted). Reversible error occurs where evidence of prior criminal conduct unjustifiably blackens the character of a defendant in the minds of the jury. *Commonwealth v. Spruill,* 480 Pa. 601, 607, 391 A.2d 1048, 1051 (1978). However, such evidence is generally admissible where it tends to establish motive, intent, absence of mistake or accident, commission of the crime, or where it was part of a chain or sequence of events which formed the history of the case. *Commonwealth v. Ross,* 413 Pa. 35, 195 A.2d 81 (1963) (evidence regarding the death of defendant's second victim admissible as sequence of the events forming the history of the case); *Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 497 (1988) (evidence of defendant's offenses of murder, terroristic threats, and kidnapping admissible to complete the story and natural development of the facts); *Commonwealth v. Brown,* 462 Pa. 578, 591, 342 A.2d 84, 90 (1975) (citation omitted) (evidence of a prior conviction or criminal act is admissible where, *inter alia,* it was part of the natural development of the facts).

Here, the witness' testimony may have had no direct bearing upon appellant's guilt or innocence of the crime at issue. But rather, the challenged evidence was admissible as proof of appellant's motive for shooting the victim. Appel-

lant stated to the witnesses that he had been recently released from jail and that he intended to kill the first white man he saw. Indeed, appellant fulfilled his malevolent plan within hours of making this statement. He killed James P. McDonnell, a perfect stranger and apparently the first white man he saw after making this statement. Appellant's pronouncement logically raises the inference that petitioner perceived his previous incarceration to be the result of unexplained actions by white males for which he was now seeking revenge. Therefore, this evidence was clearly relevant to establish appellant's motive for appellant's random shooting of an unfortunate stranger. *Commonwealth v. Bryant,* 524 Pa. 564, 572, 574 A.2d 590, 594 (1990) (the trial court properly admitted evidence as proof of appellant's motive to murder the victim that appellant possessed marijuana while in prison and that the victim, also an inmate, informed prison officials which led to a disciplinary action against appellant). Similarly, this evidence was admissible as part of the natural sequence of events which occurred shortly before the murder which forms the history of the case. *Commonwealth v. Ross, supra,* at 413 Pa. 35, 195 A.2d 81; *Commonwealth v. Lark, supra,* at 518 Pa. 290, 543 A.2d 491. A trial court cannot be expected to edit appellant's words which are foolishly uttered during the course of a crime even if as here, they may raise the inference of prior criminal conduct on appellant's part.

Even assuming, arguendo, that the evidence was improperly admitted, no new trial is warranted since any resulting error is harmless. *Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992) (admission of witness' prejudicial testimony was harmless because the prejudicial effect of the error was so insignificant that the error could not have contributed to the verdict). The uncontradicted evidence of guilt included three eyewitnesses who knew appellant, were with appellant when he opened fire on James P. McDonnell, and who all heard appellant express his desire to kill a white man for no apparent reason. Moreover, Michael Easley (appellant's friend) testified that he was with appellant after the shooting and heard appellant tell the other individuals present that he had just shot a "white boy." The evidence of appel-

lant's guilt is so overwhelming that it is clear beyond a reasonable doubt that the challenged testimony did not contribute to appellant's conviction. *Commonwealth v. Rush*, 529 Pa. 498, 503–504, 605 A.2d 792, 794 (1992). Thus, any possible error resulting from the witness' statement was clearly harmless.

Appellant's second claim is that the prosecutor committed prosecutorial misconduct at the penalty hearing by improperly urging the jury to consider the instant murder when determining whether appellant had a "significant history of felony convictions involving the use or threat of violence." During the penalty hearing, the prosecutor explained appellant's "significant history of felony convictions involving the use or threat of violence" as follows:

... In March of 1986 on the 17th day Mr. Williams was convicted and pled guilty to the crime charged. Then he didn't stop there. The man did not stop what he was going to do. On May 29th 1986 he again was found guilty for robbery, the victim [being] Jose Agusto. He was sentenced to jail, but he also during that same time was found convicted of another robbery. This was at the age of 20. He did approximately 11½ months to 23 months of jail. If you note the date on that, '86, May 29th '86, 11½ months from there would be sometime late in 1987. Early—January 27th of 1988 right after he got out of jail, the deceased was killed in our case that you found him guilty of.

After he did that, as you can see by his other convictions that he was not in Philadelphia, that he went to Boston. He was in Boston. And while in Boston, did he stop there because he was away from here? He just killed Mr. McDonnell. He just did robberies. Did his life change? This lets you know about the man, of his significant history. No, it didn't stop there because on May 6th 1988 he killed Christopher Shield. He killed Christopher Shield. He was guilty as you know before the Honorable James. D. McDaniel, Junior, on July 11th of 1990 for manslaughter charges. Now, look at the date, May 16th 1988 [sic], five months after he killed Mr. McDonnell. Let's go after that May 16th

1988. What happened then? May 13th, days later he committed another murder, the second killing; he robbed a person with a shotgun named Gary B. Lewis. Not only did he rob him, he also shot him and all of that carried more weight.

So, as you can see, in 1986 until 1988 until yesterday this man has a significant history of felony convictions involving the use of threat and violence. Those are facts that have been proven beyond a reasonable doubt.

(N.T., 2/3/92, pp. 21–22).

 Where the prosecutor merely argues matters in evidence, no new trial is warranted. *Commonwealth v. Lawson,* 519 Pa. 175, 190, 546 A.2d 589, 596 (1988). Here, the prosecutor did not urge the jury to include the instant murder as part of appellant's history of felony convictions using violence or the threat of violence. Rather, the prosecutor merely explained appellant's criminal conduct prior to the instant murder and subsequent to the instant murder. The prosecutor may properly comment on the evidence and is permitted to do so with reasonable oratorical flair. *Commonwealth v. Marshall,* 534 Pa. 488, 502, 633 A.2d 1100, 1107 (1993) (during the penalty hearing, the prosecutor is accorded reasonable latitude and may employ oratorical flair in arguing for a sentence of death); *Commonwealth v. Baker,* 531 Pa. 541, 558, 614 A.2d 663 (1992) (there is no presumption of innocence at the penalty phase, therefore, the prosecutor is entitled to "present argument for or against the sentence of death"). Accordingly, no new sentencing hearing is warranted where the prosecutor simply summarized appellant's prior chronological criminal conduct.

 Appellant's third claim is that he is entitled to a new penalty hearing because the trial court erred by admitting appellant's convictions for crimes which he committed after the instant murder. Appellant committed the instant murder on January 27, 1988. Five months later, in May of 1988, appellant beat Christopher Shealey to death and also robbed Gary Lewis at gunpoint. Appellant pleaded guilty to man-

slaughter and robbery in Suffolk County, Massachusetts. The jury here in Pennsylvania considered these convictions in addition to the crimes appellant committed prior to the instant murder, as part of appellant's history of felonies committed involving the use or threat of violence. In determining whether an offender has a significant history of felony convictions for violent crimes, it is well established that the jury may consider all existing felony convictions including those for crimes committed after the murder at issue. *Commonwealth v. Reid*, 533 Pa. 508, 517, 626 A.2d 118 (1993) (for purposes of 42 Pa.C.S. 9711(d)(9), a jury may consider convictions for offenses which occurred six days after the killing in question), *citing, Commonwealth v. Haag*, 522 Pa. 388, 407, 562 A.2d 289, 299 (1989) (in relation to aggravating circumstances, we have allowed convictions arising from crimes committed after the subject offense). Therefore, appellant's challenge to the admission of felony convictions for crimes of violence subsequent to the instant murder is without merit.

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we have a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

We have reviewed the record and conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. Furthermore, we find that the evidence supports the jury's finding of the aggravating circumstance specified in 42 Pa.C.S. § 9711(d)(9). The appellant has a significant history of felony convictions involving the use of threat of violence to the person. Moreover, in accordance with the mandates of *Zettlemoyer, supra*, at 500 Pa. 16,

454 A.2d 937 we have reviewed the data and information compiled by the Administrative Office of the Pennsylvania Courts (AOPC) pertaining to similar cases and therefore conclude that the sentence of death imposed upon appellant is not excessive or disproportionate to the penalty imposed in similar cases. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

Accordingly, we affirm the judgment of sentence of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.[7]

PAPADAKOS, J., did not participate in the decision of this case.

ZAPPALA and CAPPY, JJ., concur in the result.

MONTEMURO, J., is sitting by designation.

---

7. The Prothonotary of the Supreme Court is directed to immediately transmit the complete record of the case *sub judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).