353 A.2d 827

**COMMONWEALTH of Pennsylvania**

**v.**

**William BASTONE, Appellant.**

Supreme Court of Pennsylvania.
Submitted Jan. 12, 1976.
Decided March 17, 1976.

550

Richard A. McDaniel, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah Glass, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant William Bastone was tried by a judge sitting with a jury and convicted of murder in the first

degree.[1]  On this appeal [2] he presents five issues which he alleges entitle him to relief: (1) whether the evidence was sufficient to sustain the conviction; (2) whether the trial court properly instructed the jury on the law of felony murder in the absence of a separate felony indictment; (3) whether appellant's cross-examination of a prosecution witness was improperly limited by the trial court; (4) whether the trial court improperly refused one of appellant's points for charge; and (5) whether the trial court's "prejudicial and hostile" comments prejudiced appellant's trial.  We affirm.

## I.

At about noon, March 15, 1972, Richard Le Brew arrived at decedent's home and told him that he and some friends wished to purchase drugs.  Decedent agreed to come to the corner bar for the purpose of selling drugs. Le Brew left the house and went to the corner where, with appellant and John Jefferson, he awaited decedent's arrival.

Decedent arrived a few moments later wearing a black leather coat.  Le Brew made his purchase and left the area with Jefferson.  Appellant remained behind speaking to decedent.  As Le Brew rounded a corner from the street where the bar was located he heard a noise which sounded like a shot.  As he turned around to see what had happened, he saw appellant trotting across the street from the area where appellant and decedent had been speaking.

Within a few minutes of the noise, which decedent's mother also heard, decedent returned to his home with-

1. This case was tried under the former statutory definition of murder contained in the Act of December 6, 1972, P.L. 1482, § 1(a), formerly codified as 18 Pa.C.S.A. § 2502(a) (1973).  Under the new Crimes Code felony murder is characterized as second degree murder.  18 Pa.C.S.A. § 2502(b) (Supp.1975).

2. We hear this case under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975).

out his leather coat and with a gunshot wound of the stomach area. His mother asked him whether Le Brew had shot him. Decedent replied that it had been "three of them." Decedent said that he had been robbed.

Decedent's mother asked a neighbor to help her transport her son to a hospital. Decedent and his mother were accompanied to the hospital by decedent's sister-in-law who sat in the back of the vehicle cradling decedent's head in her lap. Decedent's sister-in-law asked him who had shot him. Decedent replied, "Please tell them to get Billy and Rick." Decedent again stated that he had been robbed and further stated that he knew he was dying. Emergency surgery at the hospital was unavailing. A medical examiner testified that a gunshot wound was the cause of death.

The police issued arrest warrants for Richard Le Brew and appellant, William Bastone. Le Brew surrendered, but appellant continued to avoid the police. Le Brew's cousin, Donald Wroten, visited appellant during this time. Wroten testified that appellant stated, "Rick was dumb for turning himself in," "he wasn't turning himself in, he wasn't going to jail," and "the boy wasn't supposed to die, but he went for his pistol and it was just one of those things."

■ The test for the sufficiency of evidence in a criminal case is whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. See *Commonwealth v. Green*, 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. Robson*, 461 Pa. 615, 623, 337 A.2d 573, 578 (1975).

Murder in the first degree under the law applicable to this case is:

"A criminal homicide . . . committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing. . . . [and a] criminal homicide constitutes murder of the first degree if the actor is engaged in or is an accomplice in the commission of . . . [a] robbery."

Act of December 6, 1972, P.L. 1482, § 1(a) (amended 1974), formerly codified as 18 Pa.C.S.A. § 2502(a) (1973). A person commits a criminal homicide if

"he intentionally, knowingly, recklessly or negligently causes the death of another human being."

18 Pa.C.S.A. § 2501(a) (1973).

■■ In this case the Commonwealth had to prove either a willful, deliberate or premeditated killing or a felony murder. The evidence introduced at trial supports a felony murder conviction. Decedent asserted that he had been robbed, appellant's statement to Wroten may be understood to indicate that he participated in a robbery-murder, and decedent was not wearing his coat when he returned to his house. These facts, together with decedent's dying declaration implicating appellant and Le Brew, were sufficient to enable the jury to find, beyond a reasonable doubt, that appellant was guilty of the first degree murder of decedent.

## II.

■■ Appellant next asserts that it was error for the trial court to charge the jury on felony murder in the absence of a felony indictment. This contention has been considered by this Court in the past and rejected. In *Commonwealth ex rel. Lagana v. Burke*, 372 Pa. 298, 300, 93 A.2d 478, 479 (1953), we said:

"Thus, . . . the Commonwealth may not be precluded from proving that the murder with which a

defendant stands charged was one committed during the perpetration of a robbery, even though the robbery is not mentioned in the indictment."

See *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974) (when indictment charges murder and burglary Commonwealth not precluded from proving first degree murder based upon some other felony) ; *Commonwealth v. Hainds*, 448 Pa. 67, 292 A.2d 337 (1972) ("we have repeatedly held that where murder is alleged to have been committed in the perpetration of a felony, perpetration of that felony need not be set forth in the indictment") ; *Commonwealth v. Lowry*, 374 Pa. 594, 98 A.2d 733, cert. denied, 374 U.S. 914, 74 S.Ct. 479, 98 L.Ed. 1070 (1953) (" 'where murder is committed in the perpetration of a felony, the perpetration of such felony need not be set forth in the indictment,' " quoting *Commonwealth v. Bruno*, 316 Pa. 394, 175 A. 518 (1954)).

### III.

■ Appellant next contends that his cross-examination of Richard Le Brew was improperly limited by the trial court.   Appellant sought to cast doubt on Le Brew's credibility by inquiring into his financial circumstances shortly before and after the killing on March 15, 1972. Apparently appellant believed that he could show that Le Brew may have committed the killing himself by inquiring where Le Brew obtained the money to make a drug purchase the evening of the murder when Le Brew had testified that he spent eight of his nine dollars making the purchase from decedent.   Although this may have been appellant's goal, we believe that the trial court did not abuse its discretion by limiting the cross-examination of Le Brew.

The Commonwealth, on direct examination, asked Le Brew if he had been charged in decedent's death.   He answered affirmatively.   On cross-examination, appellant asked Le Brew if he had been indicted for the robbery

murder of decedent. Le Brew again answered affirmatively. Appellant then asked if Le Brew had been indicted for conspiracy to commit murder. Le Brew stated that he did not know.

Other evidence tending to implicate Le Brew in decedent's murder was the hearsay statement of decedent's sister-in-law that decedent told her to have "them" get "Billy and Rick," Rick being Richard Le Brew. All of this evidence amply demonstrated that Le Brew was implicated in, and suspected of, decedent's murder. Inquiry into the collateral matter how Le Brew was able to purchase drugs later the day of the murder was not an abuse of discretion by the trial court, because the object of this collateral inquiry had already been accomplished. See *Commonwealth v. Lopinson*, 427 Pa. 284, 302–03, 234 A. 2d 552, 563, vacated on other grounds, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1967). See also *Commonwealth v. Schmidt*, 437 Pa. 563, 569, 263 A.2d 382, 385 (1967).

## IV.

■■ Appellant's fourth contention is somewhat difficult to understand. He states:

"Even if the hearsay testimony was admitted under the dying declaration exception the trial court should have instructed the jury as requested, especially in view of its refusal to determine in the first instance whether the attendant facts and circumstances warrant the admission of the testimony." [3]

Appellant's point for charge, which covers several aspects of the hearsay declaration, asserts that the jury is to determine whether the declarant knew he was dying before they credit the declaration. We believe the refusal to charge on this point is the basis of appellant's argument here.

3. Brief for Appellant at 18.

We rejected this contention in *Commonwealth v. Cooley*, 465 Pa. 35, 44, 348 A.2d 103, 108 (1975):

"[Appellant] urges that the trial court should have instructed the jury to assess for themselves whether the decedent believed he was about to die as he made the accusatory statement. That determination, however, is solely for the court, to be made incident to a decision on the statement's admissibility. . . . Factual questions which are preliminary to a legal determination of admissibility of evidence, including hearsay exceptions such as dying declarations, are simply not within the province of the jury. . . . [T]he customary general charge on credibility of the witnesses and the weight to be accorded their testimony is all that is required."

## V.

Finally, appellant urges that the trial court made "prejudicial and hostile comments" which denied appellant his right to a fair trial. Appellant correctly points out that an impartial judge is fundamental to a fair trial. We conclude after reviewing the record that the trial court conducted itself in an impartial manner in the face of what appear to have been deliberate attempts to provoke it by appellant's counsel.

Appellant's first example of the court's "prejudicial" conduct is quoted out of context. Decedent's mother was testifying concerning the events the day of her son's murder. She described the day up to the time her son was taken into surgery and she was taken to the police administration building.

"Q. [by Commonwealth] And after that did you find out what happened to [decedent]?

A. Yes, they came and told me he died, he died.

The Court: Would you mind sitting at your table, counsel?

The Witness: My son died.

The Court: Try to compose yourself. Bring her a little water.

[Commonwealth]: Can we have a moment or two Your Honor?

The Court: Yes. Are you all right now?

The Witness: Yes.

The Court: Try to compose yourself, be calm.

[Commonwealth]: I have no further questions.

[Cross-examination by defense counsel]: Mrs. O'Neal, you know your son was a big dope pusher?" An objection to this question, which was unsupported by any testimony in the case at that time and outside the scope of direct examination of the witness, was sustained. Appellant recites the discussion concerning this question as an example of the trial court's prejudice.

This opening cross-examination seems to have set, or revealed, the tone of the defense. In the presence of the jury, appellant's attorney made requests for notes of informal, non-verbatim statements witnesses gave to police; repeated questions on cross-examination and, when challenged, attempted to engage the court in a colloquy concerning the applicable law, and cited the court to the Canons of Judicial Ethics. Throughout, the court maintained an orderly atmosphere and resisted defense counsel's implicit invitation to become embroiled in a running debate.

Judgment of sentence affirmed.