498 A.2d 1322

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edward Lee FREDERICK, Appellant.**

Supreme Court of Pennsylvania.

Argued March 4, 1985.

Decided Oct. 4, 1985.

528

530

William J. Kubiak, Asst. Public Defender, Smethport, for appellant.

Jay P. Kahle, Dist. Atty., Smethport, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellant was arrested on August 18, 1982 and charged with criminal homicide, 18 Pa.C.S. § 2501, in the death of his girlfriend, Karen Meeker. Appellant was tried before a jury and convicted of first-degree murder, 18 Pa.C.S. § 2502(a). After the separate sentencing hearing required by our death penalty statute, 42 Pa.C.S. § 9711, appellant was sentenced to death. This direct appeal followed. 42 Pa.C.S. §§ 722(4) and 9711(h). Based on the arguments raised by appellant and our independent review of the case as required by *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we affirm the conviction for first-degree murder but vacate the death sentence.

Appellant and Mrs. Meeker, his victim, had lived together approximately two years. Mrs. Meeker's previous marriage ended in divorce, finalized shortly after she moved in with appellant. Her relationship with appellant was not always a happy one, and she occasionally broke it off, only to

return at a later time. Disagreements between appellant and the victim's family led appellant to file criminal charges against members of Mrs. Meeker's family. The victim herself had charged appellant with destroying some of her property. These charges were still pending at her death, although she had attempted to withdraw her complaint.

The day she was killed, the victim was seen in several places with appellant. They were seen arguing, although nobody could give any specifics about the arguments. At about 3:30 p.m. the victim was discovered lying by the side of a country road. She had been shot and mortally wounded. Her intestines were protruding from her abdomen, and she had lost quite a bit of blood. She was helped by Claudia Rice, who happened to be driving in the area. Mrs. Rice left to call for help. She returned with Ed Crafton who also was in the area. The two of them were talking with the victim in an attempt to calm her until help arrived. During these conversations, the victim identified appellant as the one who shot her. She said appellant asked her to come into the woods so he could show her something and then shot her at close range. The victim also made similar statements to the paramedics and ambulance attendants, the doctor at the hospital and several of her relatives. The victim died during surgery shortly after the police had arrested appellant.

 Appellant first claims that the trial court improperly admitted the statements made by the victim just before her death. In all those statements she identified appellant as her killer. The standard rule for the admissibility of such statements are that the declarant believes that she is going to die, that death is imminent, and that death actually results. *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981); *Commonwealth v. Little*, 469 Pa. 83, 364 A.2d 915 (1976). The declarant need not say specifically that she will die, *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972), nor must she say it to every witness who testifies. The belief in impending death can be in-

ferred from the surrounding circumstances without a direct statement of that belief by the witnesses. *Commonwealth v. Gause,* 459 Pa. 595, 330 A.2d 856 (1975). The admissibility of those statements is a matter of trial court discretion. *Commonwealth v. Bastone,* 466 Pa. 548, 353 A.2d 827 (1976). However, once admitted, the jury determines what weight they should be given. *Id.*

The court below held an evidentiary hearing out of the jury's presence to determine whether the statements incriminating appellant were admissible. Four witnesses testified at that hearing. Claudia Rice stated that Mrs. Meeker told her she was not going to make it. Ed Crafton, who also helped at the scene of the crime, corroborated that testimony. The ambulance attendant testified that the victim also told him she was dying. The doctor testified that when the victim reached the hospital she knew that she had a protruding wound in her abdomen. From all of this testimony, it is apparent that there was sufficient evidence to support the trial court's finding that the victim believed her own death was imminent. Therefore, the testimony was competent and properly admitted.

Appellant also argues that because there were some inconsistencies among the various statements made by the victim the testimony should have been excluded. However, inconsistency is not a proper basis for excluding dying declarations. *Commonwealth v. Douglas,* 461 Pa. 749, 337 A.2d 860 (1975). Once the court has ruled on the inadmissibility, the jury is free to determine whether or not to believe them, in whole or in part. *Bastone, supra.* Here, the victim was consistent in identifying appellant as the person who shot her. The inconsistencies on other matters went to weight, not admissibility, and apparently did not destroy the jurors' belief that the victim correctly identified the appellant as her assailant. There was no error in admitting the victim's statements.[1]

1. The admission of the statements also satisfies us on our independent review of sufficiency required by *Commonwealth v. Zettlemoyer, supra.* In *Zettlemoyer,* we stated that in each death penalty case we

■ Appellant also contends that the trial court improperly refused to instruct the jury that the prosecution had the burden of proving an absence of passion as an element of first-degree murder. The requested instruction is said to be required by *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *Mullaney* held, based on *In re Winship,* 397 U.S. 358 (1970), that the prosecution must prove absence of passion beyond a reasonable doubt in order to avoid reducing a homicide from murder to voluntary manslaughter, which is defined as a killing committed during the heat of passion, 18 Pa.C.S. § 2503(a).

*Mullaney* states, however, that the issue of passion must be properly presented before the instruction is required:

> [T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.

*Mullaney, supra,* at 704, 95 S.Ct. at 1892.[2] *See Commonwealth v. Upsher,* 497 Pa. 621, 444 A.2d 90 (1982) (defendant must present "some evidence" of self-defense before prosecution is required to prove absence of self-defense); *but see Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714, *cert. denied,* —— U.S. ——, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984) (evidence of intoxication places no new burden on prosecution). In the instant case, appellant has not presented any credible evidence to support his "heat of passion" contention. Thus, his requested jury instruction was properly denied.

We have defined the heat of passion as including "any emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflec-

would determine whether there was sufficient evidence to sustain the conviction for first degree murder. In *Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520 (1978), we stated dying declarations are sufficient by themselves to sustain a conviction. Therefore, the evidence in this case is sufficient.

**2.** *See Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). *Patterson* does not elaborate on what the defense must do to meet its burden of "negation."

tion." *Commonwealth v. Harris,* 472 Pa. 406, 408, 372 A.2d 757, 758–59 (1977) (*per curiam* ). The only evidence presented to support the finding of passion was that the victim and appellant had a stormy love affair and that they had been seen arguing the morning the victim was killed. This is insufficient to show the passion required to reduce a murder to manslaughter. Appellant also cites testimony indicating that he was sick and tired of their fighting. N.T. 201, 208, 214. When viewed in context, however, that testimony also fails to present the issue of legally sufficient passion. Indeed, it seems to cut the other way:

> She said he has told her he wanted to show her something up in the woods and when she got up there, he went down in the woods, picked up a gun and told her he was tired of fighting with her, is what she indicated and then he shot her.

N.T. at 201 (testimony of William Flexman).

> [S]he said my boyfriend shot me, well, a friend and she said he wanted to go for a walk in the woods. She said if I'd known he had a gun then I wouldn't have gone. He stepped into the woods and produced a gun and turned around and said I'm tired of your f___ing around on me and shot her.

N.T. at 208 (testimony of Max Crandall).

> She said they were driving up Moody Hollow Road, talking about some previous charges against us and he just pulled off the road. He got out and he called her out to the edge of the road and she said that he said that I'm sick and tired of you and your shit and then he shot her and she said she heard the truck drive away.

N.T. at 214 (testimony of Jonathan Watson). This testimony does not show the sudden provocation required by our cases. *See, e.g., Commonwealth v. Horne,* 479 Pa. 496, 388 A.2d 1040 (1978); *Commonwealth v. Whitfield,* 475 Pa. 297, 380 A.2d 362 (1977); *Commonwealth v. Mason,* 474 Pa. 308, 378 A.2d 807 (1977); *Harris, supra.* Instead, it is relevant to show appellant acted willfully in killing the victim.

The court's instruction on voluntary manslaughter did state that the jury could only find malice if:

you are satisfied beyond a reasonable doubt that the [appellant] was not acting under a sudden and intense passion resulting from serious provocation by the victim or under an unreasonable belief that the circumstances were such that if they had existed or if they existed [sic] would have justified the killing.

N.T. at 281. This instruction adequately states the proper burden of proof in this case. Therefore, the requested instruction was unnecessary. Since we have found no error in the finding of guilt, his conviction of first-degree murder must be affirmed.

Having decided the jury properly found appellant guilty of first degree murder, we now turn to the question of whether the death penalty the jurors imposed in this case can be upheld. 42 Pa.C.S. § 9711(h) states that the sentence shall be affirmed unless we find that it was the product of passion, prejudice or other arbitrary factor, that the evidence does not support the statutory aggravating circumstances, or that the sentence is disproportionate to sentences in other similar cases.

At the separate sentencing hearing conducted in this case, the prosecution presented evidence as to only one aggravating circumstance, *viz.*, a significant history of felony convictions involving the use of threat or violence to the person. 42 Pa.C.S. § 9711(d)(9). The only evidence produced was one prior conviction for voluntary manslaughter.

In *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), we held that a single prior conviction for the equivalent of third-degree murder, 18 Pa.C.S. § 2502(c), was legally insufficient to constitute a "significant history of felony convictions" under 42 Pa.C.S. § 9711(d)(9).[3] This case is

---

**3.** The dissents correctly point out that the proper application of 42 Pa.C.S. § 9711(d)(9) is difficult. *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985); *see also Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). However, their solution seems to us to dispense

identical to *Goins* except the prior conviction is voluntary manslaughter, a lesser degree of homicide than that at issue in *Goins.* Therefore, we must, as we did in *Goins,* vacate the death sentence.

Judgment of conviction affirmed; judgment of sentence vacated. Case remanded to Court of Common Pleas of McKean County for imposition of a sentence of life imprisonment.

LARSEN, J., files a concurring and dissenting opinion.

McDERMOTT, J., files a concurring and dissenting opinion in which LARSEN and PAPADAKOS, JJ., join.

PAPADAKOS, J., files a concurring and dissenting opinion in which LARSEN, J., joins.

LARSEN, Justice, concurring and dissenting.

If the death penalty is a deterrent, and I believe that it is; and if the death penalty serves the societal need for retribution, and I believe that it does; and if the death penalty serves the cathartic needs of the survivors of a murder victim, and I believe that it does; and since the death penalty prevents the murderer from murdering again; then the majority today has ignored and frustrated these important objectives and purposes of the Pennsylvania death penalty statute by establishing that a murderer such as appellant must be convicted of murder or manslaughter three times before he will be eligible to receive the death penalty. Surely the Legislature did not intend this result.

As I believe the majority's interpretation of subsection (d)(9), 42 Pa.C.S.A. § 9711(d)(9), thwarts the legislative intent and that the jury in this case properly determined that

with the ordinary implication of the word "history," the use of the word "conviction" in its plural number and the presence of 42 Pa.C.S. § 9711(d)(10) in our death penalty statute. One of the dissents points out, in hypotheticals, some of the anomalies presented by the legislature's attempt to capture in precise words the heinous crimes which warrant the final penalty of death. Reasonable precision appears required by decisions of the federal judiciary. The solution to the problems the dissents point out, therefore, lies with the legislature.

appellant's two convictions for murder and manslaughter (*i.e.,* the current conviction for murder of the first degree and the prior conviction for voluntary manslaughter) constitutes a significant history of felony convictions involving the use or threat of violence, I dissent to the majority's decision to vacate the sentence of death and remand for imposition of a life sentence. I concur in the affirmance of appellant's convictions.

We have held that the jury may consider, as evidence of the aggravating circumstances specified in subsections (d)(9) and (d)(10), a conviction not yet "final" because the defendant has not been sentenced for that conviction or because his conviction was on appeal. *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983); *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984); *Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985). This same principle would permit a jury to consider the murder of the first degree conviction which it has just returned as *part of* a defendant's significant history of violent felony convictions. It requires only a straightforward application of the language of subsection (d)(9) to affirm the jury's finding in this case—*two* homicide *convictions* (for murder and manslaughter) surely may constitute a "significant history of felony convictions involving ... violence to the person."

The majority relies upon *Commonwealth v. Goins,* 508 Pa. 270, 495 A.2d 527 (1985) (Hutchinson, J., concurring; Larsen, J., concurring and dissenting; Papadakos, J., concurring and dissenting), which in effect rewrites the statute by insertion of the concept "more than one prior" violent felony conviction into the aggravating circumstance set forth in subsection (d)(9); that is, the majority in *Goins* and in the instant case has interpreted that subsection to read "significant history of more than one prior felony conviction" involving violence to the person.[1] This modification is

---

1. *Goins* held that it was "the manifest intent of the General Assembly to include as an aggravating circumstance more than one prior violent-felony conviction...." 508 Pa. at 284, 495 A.2d at 534. *See*

improper. The legislative history cited by the majority in *Goins* to support its interpretation of subsection (d)(9) actually supports the interpretation that "significant history of felony convictions involving ... violence" includes the conviction for which the defendant has just been tried. The majority in *Goins* notes "that the Senate had previously rejected an amendment ... which included as an aggravating circumstance that '[t]he defendant was previously convicted of *another* murder or *a* felony involving the use or threat of violence to the person.' 1978 Legislative Journal—Senate at 103 (Emphasis added)." 508 Pa. at 284, 495 A.2d at 534. The legislature refined the concepts expressed in the *rejected* amendment and, instead, split this proposed aggravating circumstance into two subsections, namely (d)(9) and (d)(10).

The concept of "another murder" was embodied in subsection (d)(10) which states that it is an aggravating circumstance where the "defendant has been convicted of *another* Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." 42 Pa.C.S.A. § 9711(d)(10). In contrast, the concept of "a felony involving the use or threat of violence to the person" was finalized as subsection (d)(9) which establishes an aggravating circumstance where the "defendant has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S.A. § 9711(d)(9). Under subsection (d)(10), therefore, the defendant's "current" conviction for murder of the first degree cannot establish that aggravating circumstance because it is not *another* offense for which a sentence of death or life imprisonment is imposable. However, as the final version of the significant violent

*also id.,* 508 Pa. at 281–283, 495 A.2d at 533 ("it is important to note that the statute reads 'a significant history of felony convictions' rather than 'a history of significant felony convictions.' The pertinent rule of grammar to be followed is that that modifier should be placed, if possible, next to the word to be modified. If the legislature had intended that the seriousness of the prior felonies be the measure of the aggravating circumstance, the latter construction would have been correctly used.")

felony aggravating circumstance contains no similar limiting language (such as "another", "other" or "prior" felony convictions involving violence), the legislature must have considered a defendant's "current" conviction to constitute part of his significant history of felony convictions involving violence.

Further indication that the legislature intentionally omitted the concept of "prior" or "other" from subsection (d)(9) is gleaned from the mitigating circumstance of subsection (e)(1), that the "defendant has no significant history of *prior* criminal convictions." 42 Pa.C.S.A. § 9711(e)(1).[2] Given the rejection of the amendment discussed above (which would have established an aggravating circumstance where the defendant had been *"previously"* convicted of ... a felony involving the use or threat of violence to the person"), the use of the language *"another* Federal or State offense" in subsection (d)(10), the use of the language "significant history of *prior* criminal convictions" in subsection (e)(1), and the conspicuous absence of similar language in subsection (d)(9), I believe it clear that the majority has thwarted the legislative intent by interpreting (d)(9) to read "significant history of *more than one prior felony conviction* involving ... violence", in place of "significant history of felony convictions involving ... violence."[3]

**2.** The majority's interpretation of subsection (d)(9) would also seem to conflict with this Court's recent decision in *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984). In that case, a majority of this Court stated (albeit in dictum) that it was proper for the lower court to leave it to the jury to determine whether or not a defendant with a single prior conviction for robbery could be considered to have "no significant history of prior criminal convictions" under subsection (e)(1).

**3.** Moreover, the majority in *Goins* erred in rejecting the lower court's application of the 'singular/plural' rule of construction. The majority rejects this unambiguous rule of construction based upon some perceived "pertinent rule of grammar" which dictates, apparently, where "modifiers" must be placed, and the consequences of such placement. Such construction of the statute by resort to perceived rules of grammar, *see* note 1, *supra* (for which rule no authority, source or reference is given) highlights the concern expressed in the Commonwealth's brief in *Goins:*

Finally, this Court is required to review each sentence of death to determine whether it is "excessive or disproportionate to the penalty imposed in similar cases". 42 Pa.C. S.A. § 9711(h)(3)(iii). To that end, we have directed the Administrative Office of Pennsylvania Courts to compile and monitor an on-going, comprehensive death penalty study dealing with all aspects of cases of murder of the first degree. *Commonwealth v. Frey*, 304 Pa. 428, 475, A.2d 700, 707–08 (1984), *cert. denied* —— U.S. ——, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). This study greatly facilitates our obligation to ensure that the death penalty sentencing procedures achieve their purpose of limiting and channeling the discretion of the sentencer so as to minimize the risk of arbitrary and capricious sentencing. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 2741 (1983). Should our review disclose an arbitrary and capricious result in cases dealing with the aggravating circumstance of subsection (d)(9),[4] this

> [D]efendant argues that the word "convictions" clearly reveals the Legislature's intention to require a history of at least two convictions. In his post-verdict opinion, Judge Malmed made short work of this argument. Judge Malmed pointed to the governing rule of statutory construction, 1 Pa.C.S.A. § 1902, which provides that "the singular shall include the plural, and the plural the singular." The reason for this rule is obvious; in common English usage, it is often awkward to use one form or the other. To assure that the most understandable phrasing would not result in wooden, semantical arguments over the intended meaning of such passages, the Legislature enacted Section 1902. Defendant's attempt to read the death penalty statute as though § 1902 did not exist represents the very sort of stilted statutory interpretation the Legislature sought to avoid.
>
> *Commonwealth v. Goins, supra,* Brief for Appellee at 8. Rather than indulge in such artificial, semantical arguments over placement of modifiers to arrive at the intended meaning of "significant history of felony convictions involving ... violence," I would leave it to the common sense and wisdom of the jury to determine whether a murderer's record reveals such a significant history as to warrant the death penalty.

4. As of June 4, 1985, there have been twenty-seven convictions of murder of the first degree wherein the aggravating circumstance of significant history of felony convictions involving violence had been presented to the jury. Twenty-one of those cases resulted in the imposition of the death penalty. My review of the data compiled in those cases indicates neither excessiveness nor disproportionality but, rather, individualized determinations tailored to the circumstances of

Court would then determine whether the application of the circumstance "significant history of felony convictions involving ... violence to the person" is constitutionally infirm.

For the foregoing reasons, I would hold that, for purposes of subsection (d)(9), the jury (or judge) may consider the defendant's contemporaneous conviction for murder of the first degree as part of his or her "significant history of felony convictions involving the use or threat of violence", and I would affirm the sentence of death based thereon.

McDERMOTT, Justice, concurring [1] and dissenting.

The General Assembly has specified ten aggravating circumstances that may be weighed against mitigating circumstances by a jury considering the death penalty. *See* 42 Pa.C.S. § 9711(d)(1) *et seq.* Eight of them do not require a prior conviction or a "significant history" of felony convictions. They speak directly to the immediate current conviction and support the penalty in and of themselves, if they are properly proved and weighed against mitigating circumstances.

Section 9 [2] makes a "significant history of felony convictions" an aggravating circumstance. It does not specify when that history begins nor does it exclude the conviction the jury has rendered in the case before them.

Prescinding from an obvious rationale for the inclusion of the immediate conviction as an aggravating circumstance, the majority again retreats into the daedal grammar of *Goins*.[3] Stuck on the plural use of "convictions" in section 9, the majority closes their eyes to what becomes the

the offenses and the character of the defendant. In short, the aggravating circumstance of subsection (d)(9) has served its function of limiting and channeling the discretion of the sentencer to avoid arbitrary and capricious sentencing.

1. I join in the decision to affirm the conviction.
2. 42 Pa.C.S. § 9711(d)(9).
3. *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985).

absurd consequences of refusing to count the immediate conviction.

There is no reason why the immediate conviction, as the second in the defendant's career ought not be counted. The legislature did not say that a significant history of *prior* convictions was required. They said that a "significant history of felony convictions" was the aggravation. They significantly did not exclude the immediate conviction as a counter in that history; nor, indeed, should it be discounted. The consequences of disregarding the immediate conviction are literally astounding.

While it is true that section 10[4] would authorize the consideration of a first and second degree murder conviction committed before or at the time of the immediate offense as aggravation, a homicide of lesser degree or a crippling, blinding criminal act is, per the majority, on the house. Perhaps nothing so well points the moral as Mr. Justice Hutchinson's concurring opinion in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), where upholding his present view, he said, "In short, this appellant [Goins] has shown that he is prone to kill under certain particular circumstances, but has not done so often enough to meet the legislative definition of "significant history." *Id.*, 508 Pa. at 285, 495 A.2d at 534. Mr. Justice Hutchinson went further in *Goins, supra,* when he said, "and two or more unrelated prior violent felonies may constitute a history which satisfies § 9711(D)(9)." *Id.*, 508 Pa. at 286, 495 A.2d at 535. At least therefore, one violent felony is still a bargain. The insistence by the majority that a "significant history of felony convictions" requires more than one violent felony prior to the immediate conviction for murder, is the triumph of willful grammarians over the hectatombs of criminal deaths and the living deaths inflicted on this society by criminals who have not yet killed "often enough".

For instance, a single previous robbery, where the victim was rendered into parapelegia, because the robber, doubtless lacking the experience required by the majority, failed

4. 42 Pa.C.S. § 9711(d)(10).

to kill his victim, only counts for one. The blinding of a police officer in his last outing, counts for one; so too, the maiming a house wife, while gaining experience in gun point rape, or in a previous essay into violence, the defendant only succeeded in crippling and disfiguring, because his inexperienced hand shook while using his new switch blade. Some of these and a myriad of examples, would not count as aggravation, nor supply a "significant history" even in the face of the present conviction for murder. The General Assembly did not specify the number of prior convictions required for a "significant" history because significance transcends one or any given number of particular offenses.

LARSEN and PAPADAKOS, JJ., join in this opinion.

PAPADAKOS, Justice, concurring and dissenting.

We have unanimously affirmed the conviction of Appellant for murder of the first degree. I dissent to the majority's decision to vacate the sentence of death and remand for the imposition of a sentence of life imprisonment.

The Appellant has criminally taken the lives of two innocent persons in two separate incidents. His criminal record includes *two* felony convictions involving violence to the person. Yet, the majority, again, closes its eyes to one killing and commands the jury to ignore the slaughter of Karen Meeker in determining whether Appellant has a significant history of felony convictions involving the use of threat or violence to the person. (Aggravating circumstance 9, 42 Pa.C.S. § 9711(d)(9)).

While the majority concedes that Appellant's unlawful homicides have put quality in the significance of his history, they will not credit him with enough killings to warrant a sentence of death. The majority relies upon *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), Hutchinson, J., concurring; Larsen, J., concurring and dissenting; Papadakos, J., concurring and dissenting) in which the same majority cavalierly rewrote the statute by inserting the word "prior" in the words used by the Legislature in

aggravating circumstance 9 in order to justify its desired conclusion.

The word "prior" does not appear in aggravating circumstance 9, yet the majority concludes herein, "... there is only a single prior conviction in this case. Therefore, we must, as we did in *Goins*, vacate the death sentence." (P. 1326).

I join in the Dissent of Mr. Justice McDERMOTT. I accept the rationale in the Dissent of Mr. Justice LARSEN. I reaffirm my dissent in *Goins*.

LARSEN, J., joins in this opinion.