J-S07006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :               PENNSYLVANIA
                                             :

                 v.                         :
                                           :

WAYNE C. WHITE, JR.                :
                                         :
            Appellant           :     No. 1030 MDA 2024

Appeal from the Judgment of Sentence Entered June 11, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0001142-2020

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :               PENNSYLVANIA
                                             :

                 v.                         :
                                           :

WAYNE C. WHITE, JR.                :
                                         :
            Appellant           :     No. 1031 MDA 2024

Appeal from the Judgment of Sentence Entered June 11, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003717-2021

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:         **FILED: JULY 9, 2025**

Appellant Wayne C. White, Jr. appeals from the judgment of sentence imposed following his non-jury trial at Docket No. 3717-2021 and guilty plea at Docket No. 1142-2020.  On appeal, Appellant raises claims concerning the trial court's evidentiary rulings and the discretionary aspects of his sentences. We affirm.

The trial court briefly summarized the facts of each case as follows:

> [The case at Docket No. 3717-2021] resulted from an incident which occurred on August 27, 2020, in Plymouth Borough, Luzerne County, Pennsylvania. [On that date, Appellant] shot the victim five times while the victim was seated in his vehicle. Three of the shots struck the victim in the face.

Trial Ct. Op., Docket No. 3717-2021, 9/12/24, at 1.

> [The case at Docket No. 1142-2020] resulted from an incident which occurred on December 30, 2018 during which [Appellant] stabbed the victim five times while robbing him of $200.00.

Trial Ct. Op., Docket No. 1142-2020, 8/15/24, at 1.

Following a bench trial at Docket No. 3717-2021, Appellant was convicted of criminal attempt – criminal homicide, aggravated assault – attempts to cause serious bodily injury or causes injury with extreme indifference, aggravated assault – attempts to cause or causes bodily injury with a deadly weapon, and recklessly endangering another person (REAP).[1]

On March 7, 2024, Appellant pled guilty to robbery – inflicts serious bodily injury and aggravated assault – attempts to cause or causes bodily injury with a deadly weapon at Docket No. 1142-2020.[2]

On March 11, 2024, the trial court imposed consecutive sentences of twenty to forty years' incarceration for criminal attempt - criminal homicide, thirty-three to sixty-six months for aggravated assault – attempts to cause or causes bodily injury with a deadly weapon, and one to two years' incarceration

_____

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 2702(a)(4), & 2705, respectively.

[2] 18 Pa.C.S. §§ 3701(a)(1)(i) & 2702(a)(4), respectively.

for REAP.[3]  The court also imposed a sentence of ten to twenty years'
incarceration for robbery, which was run consecutively to the sentences
imposed at Docket No. 3717-2021, and a concurrent sentence of twenty-
seven to fifty-four months for aggravated assault – attempts to cause or
causes bodily injury with a deadly weapon at Docket No. 1142-2020.  The
court's aggregate sentence was thirty-three years and nine months'
incarceration to sixty-six years and six months' incarceration across both
docket numbers.[4]

Appellant timely filed post-sentence motions at both docket numbers
seeking the modification of his sentence at Docket No. 1142-2020 and
challenging the weight of the evidence at Docket No. 3717-2021.  On July 16,
2024, the court denied the post-sentence motions at both docket numbers.
Appellant subsequently filed a timely notice of appeal, and a court ordered
Pa.R.A.P. 1925(b) statement.  The trial court issued a Rule 1925(a) opinion
for Docket No. 1142-2020 on August 15, 2024, and for Docket No. 3717-2021
on September 12, 2024.

Appellant raises the following issues for our review:

1. Whether the trial court erred or abused its discretion in
   admitting hearsay statements of Commonwealth witnesses.

---

[3] Appellant was not sentenced on aggravated assault – attempts to cause
serious bodily injury or causes injury with extreme indifference due to merger.

[4] At sentencing, the court misstated the minimum of the aggregate term of
incarceration as being thirty-three years and three months rather than thirty-
three years and nine months.  *See* N.T., 3/11/24, at 8.

2. Whether the trial court erred or abused its discretion in issuing consecutive sentences that resulted in an excessive and unduly harsh aggregate sentence.

Appellant's Brief at 1.

**Hearsay Statements**

In his first issue, Appellant challenges the trial court's admission of hearsay statements in the case involving the shooting incident, at Docket No. 3717-2021. *See id.* at 1, 7-11. Specifically, Appellant argues that the court erred when it admitted statements that the victim made to police while he was being treated at the hospital after the shooting occurred. *Id.* at 7-8. Appellant claims that, although the Commonwealth sought admission under Pa.R.E. 804(b)(2), the trial court erred by admitting the statements under Pa.R.E. 803.1(4). *Id.* at 7-11. Appellant, citing *Commonwealth v. Frederick*, 498 A.2d 1322 (1985), argues that the statements do not qualify under Rule 804(b)(2) because the victim did not die. *Id.* at 8.

Alternatively, Appellant argues that the trial court failed to analyze whether the statements were "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;" "a writing signed and adopted by the declarant;" or "a verbatim contemporaneous electronic recording of an oral statement" as required by Pa.R.E. 803.1(4). *Id.* at 9-11. Appellant contends that admission of the victim's statements was improper and skewed the evidence in favor of the Commonwealth because it was "the central piece of evidence linking Appellant to the shooting." *Id.* at 11.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa. Super. 2014) (citations omitted and some formatting altered).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citation omitted).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa. Super. 2019) (citation omitted and some formatting altered).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the

statement.  *See* Pa.R.E. 801(c).  Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute.  *See* Pa.R.E. 802.  "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact.  Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule."  *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (citation omitted).

Pennsylvania Rule of Evidence 804(b)(2) concerns the Statement Under Belief of Imminent Death exception, which is defined as "[a] statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances."  Pa.R.E. 804(b)(2).  In order for this exception to be applicable, the declarant must be unavailable as a witness. *See* Pa.R.E. 804.  A declarant is unavailable when he, *inter alia*, "testifies to not remembering the subject matter, except as provided in Rule 803.1(4)." Pa.R.E. 804(a)(3).

Under Pa.R.E. 803.1(4), a prior statement by a declarant witness is excepted from the hearsay rule when the "declarant-witness . . . testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible" and the statement was "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;" "a writing signed and adopted by the

declarant;" or "a verbatim contemporaneous electronic recording of an oral statement." Pa.R.E. 803.1(4).

Here, the statement in question came from the testimony of Plymouth Borough Police Captain Michael Thomas. *See* N.T., 1/8/24, at 191, 200-05.[5] Captain Thomas testified regarding his conversation with the victim at Wilkes-Barre General Hospital immediately following the shooting. *Id.* at 200-05. Captain Thomas summarized his conversation with the victim as follows:

> [The victim] indicated he was sitting on Ferry Street waiting for a friend and talking on the phone to a friend . . . . [He then] observed a known male to him – previously known male to him as Frank[6] in the rear-view mirror. He said that he then didn't observe Frank any further and continued speaking on his cellular phone
>
> At that point in time, he observed Frank once more at his . . . passenger's side window that was open at the time. Frank was holding a black and purple handgun as he described it to me. He indicated that Frank said, "get out of here you pu**y." It was something along those lines. I believe it was, "F**k off. Get out of here pu**y."
>
> At that point in time, he then shot at him in the face. [The victim] indicated he grabbed the gun trying to fight for his life and that a struggle ensued. After the struggle ensued, Frank then shot at him numerous times; and [the victim] was able to flee the area after putting his vehicle in drive.

---

[5] The notes of testimony from Appellant's trial span multiple dates but use continuous pagination throughout. To avoid confusion, we reference the first date of the trial, January 8, 2024, in our citations regardless of which date the testimony actually occurred on.

[6] Testimony elicited at trial established that the defendant also went by the alias "Frank White." *See* N.T., 1/8/24, at 52, 57-59, 219-22, 225-30, 232-34, 243-44, 257-61, 273-85.

*Id.* at 202-03 (some formatting altered).

In admitting the evidence, the Court explained:

[This c]ourt finds that the Commonwealth has a burden of a two-prong test to allow any statements given to law enforcement by [the victim] on the day of the shooting. The first part is 804(b)(2) which is: Was the statement given by [the victim] under the belief of imminent death?

Clearly in looking at the evidence from yesterday that was elicited on the record, [the victim] himself testified that he thought he was going to die. He mentioned at least three times to his girlfriend . . . that he thought he was going to die. He also told Detective Jeff Lewis, one of the first arriving police officers on the scene, that he thought he was going to die.

Based upon his statement and the testimony of the two other witnesses who said that his statements were that he thought he was going to die and based upon the fact of the evidence of this shooting of five shots in close range to vital organs of the body and the fact that he was bleeding profusely, the Court finds that the statements made by [the victim] are credible and that he did, in fact, fear – have a belief of imminent death based upon the injuries and his state of mind at that time.

The second prong is 803.1(4) which basically now – [the victim] testified he has no memory – his last memory was going into the ambulance in front of his residence and his next memory is being on the roof of Wilkes-Barre General Hospital being ready to be loaded into a helicopter to be taken to Geisinger Danville. He has no memory of anything between those two events. Based upon his physical condition and his testimony, the court finds that [the victim's] testimony of his lack of a memory in this case is credible.

*Id.* at 110-11.

After careful review, we conclude that the trial court did not abuse its

discretion by admitting the statements the victim made to police while at

Wilkes-Barre General Hospital because those statements were admissible

pursuant to Pa.R.E. 804(b)(2).[7] **See Belknap**, 105 A.3d at 9-10.  The victim testified that he had no memory of talking to police in the hospital.  N.T., 1/8/24, at 76-77.  The trial court found the victim's testimony about his lack of memory credible.  **Id.** at 111.  Since the trial court found the victim credible regarding his lack of memory, Pa.R.E. 803.1(4) did not apply.[8]  Therefore, the victim was unavailable for the purposes of Pa.R.E. 804.  **See** Pa.R.E. 804(a)(3).

The trial court also found that the victim believed his death was imminent.  N.T., 1/8/24, at 110-11.  This finding is supported by the record.  The victim testified that, after being shot, he attempted to drive himself to the hospital but did not think he would survive the drive.  **Id.** at 69-70.  He stated that he was covered in blood, that blood was coming out of his mouth, and that he was having difficulty breathing.  **Id.** at 71-72.  Additionally, the victim's girlfriend testified that when the victim arrived back home after being shot, he told her several times he thought he was dying.  **Id.** at 40-43.  Further, an officer who responded to the shooting testified that when he arrived, the victim was covered in blood and screaming that he was dying.

_____

[7] To the extent that our rationale differs from the trial court opinion, we note that "this Court is not bound by the reasoning of the trial court, and . . . may affirm the trial court[] . . . on any valid basis."  **See Dockery v. Thomas Jefferson University Hospital**, 253 A.3d 716, 721 (Pa. Super. 2021).

[8] While the trial court phrased its findings in a slightly confusing manner, by finding the victim credible about his lack of memory, the court essentially concluded that he was not a "turncoat witness" as contemplated by the comment to Pa.R.E. 803.1(4).  **See** Pa.R.E. 803.1(4) and cmt.

*Id.* at 14. Finally, a doctor that treated the victim testified that the victim was shot several times in vital areas of the body such as the chest, back, and neck. *Id.* at 118. All of this evidence supports the trial court's finding that the victim thought he was imminently dying. *See* Pa.R.E. 804(b)(2)

Additionally, the victim's statement, as testified to by police, was limited to the cause or circumstances of what he believed was going to be his imminent death. The victim told police that he was sitting in his car when a man he knew as "Frank" came up to his passenger side window and shot him multiple times. *See* N.T., 1/8/24, at 202-03. Since the victim was unavailable to testify about the identity of the shooter pursuant to Pa.R.E. 804(a)(3), made the statement at issue believing his death was imminent, and the statement concerned the cause or circumstances of what he believed would be his imminent death, the statement was admissible pursuant to Pa.R.E. 804(b)(2).

Finally, Appellant's reliance on *Fredrick* is misplaced. Appellant argues that a statement under belief of imminent death is only admissible when "the declarant identifies his attacker; declarant believes he is going to die; [his] death is imminent; and *[his] death actually results*." Appellant's Brief at 8 (*citing Fredrick*, 498 A.2d 1322) (emphasis added). However, *Fredrick* was decided in 1985, over a decade before the passage of the Pennsylvania Rules of Evidence. A careful review of Rule 804's text compels us to reach the opposite conclusion as none of the Rule's text, or the comments thereto, suggest Pa.R.E. 804(b)(2) is limited to situations where the declarant dies.

*See* Pa.R.E. 804 and cmts. In fact, Rule 804(a) provides five situations in which a declarant can be considered unavailable as a witness. *See* Pa.R.E. 804(a). These situations include, *inter alia*, the declarant's death and the declarant testifying that he does not remember the subject matter as reasons for unavailability. *See id.* After setting forth the criteria for unavailability, Rule 804(b) provides the exceptions to the hearsay rule and states that "[t]he following are not excluded by the rule against hearsay if the declarant is **unavailable** as a witness." Pa.R.E. 804(b) (emphasis added). Rule 804(b) then lists each exception, which includes "[a] statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances." *Id.* The Rule in no way limits Pa.R.E. 804(b)(2) to require unavailability of the declarant due to his or her death. *See id.* Furthermore, the Rule is unambiguous as it clearly states that all of the situations causing unavailability in Pa.R.E. 804(a) apply to the exceptions listed in Pa.R.E. 804(b).[9] Accordingly, Appellant's argument is unavailing.

For the reasons stated above, we conclude that the trial court did not abuse its discretion when it admitted the victim's statements under Pa.R.E. 804(b)(2). *See Belknap*, 105 A.3d at 9-10. Therefore, Appellant is not entitled to relief.

---

[9] *See* Pa.R.J.A. 108(b) (stating that "every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"); Pa.R.E. 101(c) (reflecting that in constructing the Pennsylvania Rules of Evidence, the principles set forth in the Pennsylvania Rules of Judicial Administration shall be observed).

### Discretionary Aspects of Sentencing

Appellant also challenges the discretionary aspects of his sentences. Appellant's Brief at 1, 3, 11. Specifically, Appellant argues that the trial court abused its discretion by sentencing him to ten to twenty years for robbery on Docket No. 1142-2020 to run consecutively to the sentences imposed on Docket No. 3717-2021. *Id.* at 11-13. Appellant also argues that the trial court failed to consider that he accepted responsibility for the charges on Docket No. 1142-2020 when it imposed his sentence. *Id.* at 13. Further, Appellant claims that running his sentences consecutively resulted in an aggregate sentence that "would require Appellant to remain in prison well into his 80's and have the result of a life sentence." *Id.* at 12.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted). "To preserve an attack on the discretionary aspects of sentence, an

appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Furthermore, a "Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the [Sentencing] Code is violated." ***Commonwealth v. McNabb***, 819 A.2d 54, 56 (Pa. Super. 2003) (quoting ***Commonwealth v. Goggins***, 748 A.2d 721 (Pa. Super. 2000)). Additionally, "the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates the norm." ***Id.*** "Bald allegations of excessiveness are insufficient." ***Id.*** at 55.

Here, the record confirms that Appellant preserved his sentencing claims in a post-sentence motion, filed a timely notice of appeal, and included the

issues in his Rule 1925(b) statement.[10] Appellant has also included a Rule 2119(f) statement in his brief. **See** Appellant's Brief at 3.

In his Rule 2119(f) statement, Appellant explains:

The trial court by sentencing Appellant to a term of incarceration that was unduly harsh and excessive considering the total length of sentences represents a substantial question for which this court must exercise discretionary review. 42 Pa.C.S.§ 2119(f)[.]

**Id.** (some formatting altered).

Following our review, we conclude that Appellant's Rule 2119(f) statement, which merely makes a bald allegation of excessiveness, fails to raise a substantial question.[11] **See McNabb**, 819 A.2d at 55-56. Appellant did not specify in his Rule 2119(f) statement where his sentence falls within

_____

[10] Appellant filed a Post-Sentence Motion and Rule 1925(b) Statement preserving his sentencing issues at Docket No. 1142-2020. However, Appellant did not preserve any sentencing claims at Docket No. 3717-2021. To the extent that Appellant is making an argument regarding his sentences at Docket No. 3717-2021, that argument is waived. **See Malovich**, 903 A.2d at 1251; **see also** Pa.R.A.P. 302(a).

[11] Even if Appellant had raised a substantial question, we would conclude that the trial court did not abuse its discretion. The trial court was free to impose consecutive sentences. **See Commonwealth v. Brown**, 249 A.3d 1206, 1216 (Pa. Super. 2021) (stating that the sentencing court has discretion to impose consecutive sentences and that an appellant does not get a "volume discount" when being sentenced on multiple convictions). Furthermore, the trial court had the Appellant's PSI report. N.T., 3/11/24, at 2; **see Commonwealth v. Edwards**, 194 A.3d 625, 638 (Pa. Super. 2018) (stating that where a trial court is informed by a PSI report, it is presumed that the court is aware of all sentencing factors and its discretion should not be disturbed). Additionally, we note that Appellant's sentences on Docket No. 1142-2020 were both standard range guideline sentences. **See** Trial Ct. Op., Docket No. 1142-2020, 8/15/24, at 4-5 (unpaginated).

the guidelines nor has he identified the sentencing norm the trial court violated and how that norm was violated. ***See id.*** We, therefore, decline to address the merits of Appellant's challenge.

Order affirmed. Jurisdiction relinquished.

Judge King joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/9/2025