J-A20028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RAFIQ THOMPSON :
:
Appellant : No. 2730 EDA 2023

Appeal from the Judgment of Sentence Entered September 19, 2023
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002430-2022,
CP-46-CR-0002431-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED OCTOBER 17, 2024**

Rafiq Thompson appeals from the aggregate judgment of sentence of consecutive life sentences, as well as consecutive imprisonment sentences for lower graded offenses, following his convictions for Murder of the First Degree, 18 P.S. § 2502A, and Murder of an Unborn Child, 18 P.S. § 2604, and related crimes.[1] We affirm.

---

[1] We note that, on October 17, 2023, Thompson filed a notice of appeal at each of the two trial court dockets. Each notice of appeal listed both trial court docket numbers. Pursuant to Pennsylvania Rule of Appellate Procedure 341, when a single order "resolves issues arising on more than one docket[,] separate notices of appeal must be filed." Pa.R.A.P. 341 at Official Comments; *see also Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018), *overruled in part by Commonwealth v. Young*, 265 A.3d 462, 477 and n.19 (Pa. 2021) (reaffirming *Walker* but holding that Pennsylvania Rule of Appellate Procedure 902 permits an appellate court, in its discretion, to allow
*(Footnote Continued Next Page)*

The trial court accurately and concisely summarized the factual background of this case as follows:

> [Thompson]'s convictions arose out of the April 8, 2022, shooting death of his on-and-off girlfriend Tamara Cornelius and the death of her unborn child around 10:21 p.m. Ms. Cornelius and [Thompson] were involved in a rocky relationship and she was pregnant with [Thompson]'s child. On the day of her murder, she agreed to meet [Thompson] for dinner at the Cheesecake Factory, King of Prussia, Montgomery County. Once there, they argued about their relationship and about the baby. [Thompson] left, leaving Ms. Cornelius at the restaurant. [Thompson] waited about a half an hour for Ms. Cornelius to leave the restaurant. He waited in the parking lot with a loaded gun on his hip. He drove, following Ms. Cornelius' car, with his headlights off and his loaded Glock 19 on his hip. She pulled into the Exxon gas station right across from the mall. Surveillance video and witness accounts established that [Thompson] pulled his car right behind hers. [Thompson] yelled at Ms. Cornelius, and she ignored him. He stood at his car door, hiding his gun that he had in his hand. As Ms. Cornelius began to pump gas, [Thompson] raised his gun, aimed his gun, and fired

_____

correction of a Rule 341 error); **see also** Pa.R.A.P. 902(a) (effective May 18, 2023) (stating, "[a] notice of appeal must be filed in each docket in which the order has been entered"). This Court recently held that it is of no consequence that a notice of appeal contains more than one trial court docket number, so long as the party files a notice of appeal at each of the trial court dockets. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) (en banc), *appeal denied*, 242 A.3d 304 (Pa. 2020); **see also Commonwealth v. Larkin**, 235 A.3d 350, 352 (Pa. Super. 2020) (en banc), *appeal denied*, 251 A.3d 773 (Pa. 2021). In other words, for purposes of perfecting an appeal, this Court is concerned that a notice of appeal is filed at each trial court docket, not whether the notice of appeal contains more than one trial court docket number.

Here, the record reveals that Thompson filed a notice of appeal at each trial court docket. The certified record of each trial court docket was then forwarded to this Court for purpose of appeal. This Court assigned only one docket number to Thompson's appeal. Based upon our review of Rule 341, Rule 902, **Walker**, and its progeny, we conclude that Thompson perfected two appeals from the September 19, 2023 judgment of sentence entered at each trial court docket.

at her. Ms. Cornelius tried to get away and he followed her and fired again. In all, [Thompson] shot at her four times. One of those shots was the deadly shot, going through her heart and lungs. Eyewitnesses called 9-1-1 to report the shooting. Ms. Cornelius and her unborn baby were pronounced dead at the hospital a short time later.

1925(a) Opinion, 12/5/2023 at 1-2.[2]

Thomspon was charged in Criminal Information Docket Number CR 2430-2022 in relation to the death of Tamara Cornelius with:

Count 1: Murder of the First Degree, 18 P.S. § 2502A
Count 2: Murder of the Third Degree, 18 P.S. § 2502C
Count 3: Persons Not To Possess, Use, Manufacture, Control, Sell
    or Transfer Firearms, 18 P.S. § 6105A1
Count 4: Receiving Stolen Property, 18 P.S. § 3925A
Count 5: Firearms Not To Be Carried Without A License, 18 P.S. §
    6106A1
Count 6: Possess Firearm/Other Weapon With Intent, 18 P.S. §
    907B

He was also charged in Criminal Information Docket Number CR 2431-2022, with Murder of an Unborn Child, 18 P.S. § 2604(A)&(C), in relation to the death of Tamara Cornelius' unborn child.

Trial was held in September 2023. On September 13, 2023, after deliberations, the jury found Thomspon guilty of first-degree murder; first degree murder of unborn child; receiving stolen property; firearms not to be carried without a license; and possession of a firearm with intent. The trial court found him guilty of persons not to possess a firearm. The jury was not

_____

[2] We cite to the well-written, comprehensive opinion filed by the Honorable William R. Carpenter on December 5, 2023, many times throughout this memorandum.

able to reach a unanimous verdict after the penalty phase, at which time the trial court sentenced him, inter alia, to the mandatory sentences of life in prison for the murder charges:

> Docket No. 02430-2022
> Murder in the First Degree: Life in Prison Without Parole;
>
> Docket No. 02431 ·2022
> Murder of an Unborn Child in the 1st Degree: Life in Prison Without Parole, consecutive to the foregoing sentence;
>
> Docket No. 02430·2022
> Persons not to Possess Firearms: Not less than 10 nor more 20 years in prison, consecutive to the foregoing sentences;
>
> Theft by Receiving Stolen Property (Firearms): a minimum of five years to a maximum of 10 years' incarceration, consecutive to the foregoing sentences;
>
> Firearms Not to be Carried without a License: a minimum of 3 ½ years to a maximum of 7 years' incarceration, consecutive to the foregoing sentences;
>
> Possession of a Weapon: a minimum of 2 ½ years to a maximum of 5 years' incarceration, concurrent to the foregoing sentences.

Thompson's post-sentence motion was denied on October 6, 2023. A timely appeal was filed, and counsel complied with the requirements of Pa.R.A.P. No. 1925. In this appeal, Thompson raises the following two issues:

> (a.) Did the Trial Court err in denying [Thompson]'s request for a Jury Instruction on Voluntary Manslaughter—Heat of Passion, pursuant to PA SSCJI 15.2503A, where the facts of record supported the same?
>
> (b.) Did the Trial Court abuse its discretion in sentencing [Thompson] to a total term of incarceration of Life in Prison without Parole; to be followed by a consecutive sentence of Life in Prison without Parole; to be followed by an aggregate, consecutive sentence of eighteen and one-half (18½) to thirty-seven (37)

years of imprisonment; where the charges were part of a single criminal episode?

Appellant's Brief, at 5.

On appeal, Thompson contends that the trial court erred in denying his request to instruct the jury on voluntary manslaughter. Thompson contends that there was sufficient evidence presented at trial to support a jury instruction on the charge of Voluntary Manslaughter—Heat of Passion. This instruction, requested by counsel for Thompson, was rejected by the trial court. Following a close review of the certified record, we find that the trial court properly denied the request.

The relevant inquiry for an appellate court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case.

> [W]e hold that a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict. Therefore, only where an instruction is requested and only if the evidence supports "heat of passion" voluntary manslaughter, is an instruction thereon required.

*Commonwealth v. Browdie*, 671 A.2d 668, 674 (Pa. 1996). Additionally, the Pennsylvania Superior Court has stated:

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not

- 5 -

clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa. Super. 2008) (quoting

*Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa. Super. 2006))

(brackets omitted).

The crime of voluntary manslaughter is codified at 18 Pa.C.S.A. § 2503,

which provides in relevant part:

**(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

**(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(a)-(b).

In the instant case, the trial court declined to give a voluntary

manslaughter instruction. The record supports the court's ruling. We first refer

to the trial court's explanation of its analysis and reasoning in denying this requested instruction, as made at the time of trial:

> Here, the defendant and the victim did have, according to him, a rocky relationship. On the day of the shooting, the defendant asked her to meet him for dinner. They met at the Cheesecake Factory Restaurant in King of Prussia. He did not stay for the meal, but he did wait about a half an hour for her in the parking lot. Then he followed her to the Exxon gas station, and then he shot her. He did have a cooling-off period during that time even if he was talking to her on the phone.
>
> At the Exxon station, his actions on the video are very calculated, cool, calm, willful, and deliberate. There's no evidence of a heat of passion there. He got out of the car. He was holding a loaded handgun down by his leg. He had his left hand up in the air. He was speaking in a loud voice. She kind of ignored him. She was putting gasoline in her car. He carefully aimed at her torso and shot her. He then pursued her when she tried to flee. Then he calmly returned to his vehicle; he entered it; he manipulated it between two cars at the gas station. This was a rather tight space as shown on the video. He left the scene of the crime. He fled. He discarded the murder weapon along the way. And then he stopped for fast food.
>
> Clearly, his mind was entirely capable of cool reflection. There was no serious provocation. There was no adequate provocation. A reasonable man confronted with this series of events would not have become so impassioned to the extent that his· mind was incapable of cool reflection. These events were not sufficient to excite an intense passion in a reasonable person. His actions do not show that he was acting under any sudden and intense passion. As I indicated, he did have a cooling-off period.
>
> The world is full of people dealing with divorce, failed relationships, and child custody problems. Such problems are not reasons to kill in the mind of a reasonable person. Also, this did testify - - his testimony was that he did not know why he killed Tamara and the unborn child.
>
> So the motion is denied. The instruction will not be given.

N.T., Jury Trial Day 6, 9/12/23, at. 237-38.

With respect to a "heat of passion" voluntary manslaughter instruction, the Pennsylvania Supreme Court has explained:

> A voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict. To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, [the] appellant acted under a sudden and intense passion resulting from serious provocation by the victim. If any of these be wanting-if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

***Commonwealth v. Sanchez***, 82 A.3d 943, 979-80 (Pa. 2013) (quotation marks and citations omitted).

> "Heat of passion" includes emotions such as anger, rage, sudden resentment or terror which renders the mind incapable of reason. An objective standard is applied to determine whether the provocation was sufficient to support the defense of 'heat of passion' voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection.

***Commonwealth v. Miller***, 987 A.2d 638, 650 (Pa. 2009) (citations and most quotation marks omitted).

A trial court must make an initial determination whether sufficient evidence has been presented of serious provocation. ***See Commonwealth v. Carter***, 466 A.2d 1328, 1323 (Pa. 1983) (where evidence does not support finding of manslaughter, court need not submit issue to jury); ***Commonwealth v. Dews***, 239 A.2d 382, 384-85 (Pa. 1968) (where no evidence of manslaughter, it is proper to refuse to submit manslaughter issue to jury); ***Commonwealth v. Carr***, 580 A.2d 1362, 1364 (Pa. Super. 1990).

In this case, Thompson and the victim had a tumultuous relationship around the time of the regretful incident, including their meetings, discussions, and the sometimes presence of Thomas Lockhart. In addition, according to Thompson's testimony, immediately prior to the murder, he and the victim had a conversation in which the victim said things that were hurtful to him. Taking all of this evidence together, it is not sufficient to warrant an involuntary manslaughter jury instruction. There was no legally sufficient provocation on the day of the murder. Our case law holds that evidence that the defendant and the victim had a difficult relationship and had argued on the day of the killing is insufficient to warrant a voluntary manslaughter instruction. *See*, *Commonwealth v. Frederick*, 498 A.2d 1322, 1325 (Pa. 1985) (earlier argument between defendant and victim insufficient to support finding of sudden provocation); *see also*, *Commonwealth v. Walters*, 244 A.2d 757, 762 (Pa. 1968) (holding that there was insufficient evidence that defendant killed in heat of passion after the victim argued with and cursed at the defendant prior to the murder); *Commonwealth v. Cisneros*, 113 A.2d 293, 296 (Pa. 1955) (wife's racial slurs to husband emphasized by sticking her finger at his shoulder was insufficient provocation).

The trial court also correctly concluded that there was sufficient evidence of a cooling-off period between the confrontation at the restaurant and the eventual shooting.

> [T]he passage of time between provocation and the "passion"
> must be viewed as a cooling period, and killings will not be

deemed to have occurred under the heat of passion where there was sufficient time for cooling between whatever provocation might have existed and the actual killings.

*Commonwealth v. Mason*, 130 A.3d 601, 629 (Pa. 2015) (citation omitted).

Here, following the failed dinner at the Cheesecake Factory, Thompson laid in wait for the victim in the parking lot of the restaurant, and then stalked her to the Exxon gas station; he eventually pulled in behind her when she stopped at the gas station. Even at the gas station, the victim attempted to ignore Thompson, but without any type of immediate provocation he intentionally shot her.

The cases cited by the defense in support of providing this jury instruction cite to the "cumulative impact" theory. Pennsylvania Suggested Standard Criminal Jury Instruction § 15.2503A provides, in pertinent part:

> 4. [T]he cumulative impact of a series of related events can lead to sudden passion and amount to serious provocation. The test is whether a reasonable person, confronted with the same series of events, would become so impassioned that he or she would be incapable of cool reflection.[3]

Pa. SSJI (Crim) 15.2503A4 (brackets provided; original brackets omitted).

In support of his argument, Thompson cites to *Commonwealth v. Voytko*, 503 A.2d 20 (Pa. Super. 1986). We find *Voytko* distinguishable from the present facts. In *Voytko*, the appellant had "found his wife in an act of

---

[3] The following cautionary language precedes the suggested instruction: "[*Heat of Passion: to be given only if the facts of record support*]." Pa. SSJI (Crim) 15.2503A.

adultery with (the victim), had physically fought with (the victim), had argued with his wife, had been deserted by his wife, and finally, had found her in (the victim's) company, returning from a date, at 5:00 a.m." *Id*. at 23. Based upon these factual circumstances, the Superior Court found in *Voytko* that the jury should have been instructed on the "cumulative effect" of these related events, and that together they may have satisfied the serious provocation element of voluntary manslaughter.

In this case, it was undisputed at trial that Thompson left the restaurant before the end of the planned dinner meeting and, as previously said, laid in wait for the victim in the parking lot. He followed her having in his possession a loaded gun, approached her at the gas station, and without immediate provocation shot her in cold blood. Unlike the factual background in *Voytko*, Thompson was the aggressor and shot the victim while she was trying to ignore him. As our Court found in *Commonwealth v. Crawley*, 2022 WL 1183211, at *5-*6 (Pa. Super. filed April 21, 2022), where the defendant laid in wait for the victim in the parking lot before stabbing her and running her over with his truck, we do not find *Voytko* analogous to the present facts.

No do we find the present case comparable to *Commonwealth v. Stonehouse*, 555 A.2d 772 (Pa. 1989), wherein a plurality of the Supreme Court found trial counsel ineffective to failing to request a "cumulative effects" instruction and remanded for a new trial. In *Stonehouse*, the appellant had introduced evidence at trial that she had been, over a course of years,

repeatedly and constantly harassed and stalked by the victim. During the incident wherein the appellant had shot the victim, evidence was presented at trial that he had threatened her with a weapon. The facts of this case are clearly distinguishable from **Stonehouse** and do not mirror the long history of "cumulative effects' imposed upon the defendant.

We join in the trial court's astute conclusion that the facts of this case did not warrant an instruction under the law of "cumulative impact":

> The facts of this case are more in line with Pennsylvania case law holding evidence that a defendant and the victim had a difficult relationship and had argued on the day of the killing was insufficient to warrant a voluntary manslaughter instruction. See, **Commonwealth v. Frederick**, 498 A.2d 1322, 1325 (Pa .1985); see also, **Commonwealth v. Walters**, 431 Pa, 74, 244 A.2d 757 (1968) (holding that there was insufficient evidence that defendant killed in heat of passion after the victim argued with and cursed at the defendant prior to the murder); **Commonwealth v. Cisneros**, 113 A.2d 293, 296 (Pa. 1955) (wife's racial slurs to husband emphasized by sticking her finger at his shoulder was insufficient provocation).

1925(a) Opinion, 12/5/2023 at 23.

For these reasons and those set forth on-the-record at trial, the request for voluntary manslaughter jury instructions was properly denied.

In his second and final issue, Thompson contends the trial court abused its discretion by imposing consecutive life sentences for the charges of first-degree murder and murder of an unborn child, as well as to a consecutive aggregate sentence on the remaining charges of a minimum of 18½ years' to a maximum of 37 years' incarceration.

Thompson concedes this is a challenge to the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Thompson preserved his issue through a timely post-sentence motion and filed a timely appeal. Further, counsel has included the required Rule 2119(f) statement.

We must examine Thompson's Rule 2119(f) statement to determine whether a substantial question exists. *See Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. (citation and emphases omitted); *see also* Pa.R.A.P. 2119(f).

Thompson "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *McAfee*, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Tirado*, 870 A.2d at 365 (citation omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted).

Thompson asserts the court abused its discretion by imposing consecutive sentences. Specifically, Thompson asserts the court failed to adequately consider mitigating information and sentenced Thompson "solely on [its] own thoughts, feelings and opinions regarding the nature of Appellant's offenses as justification for imposing multiple, consecutive sentences . . . ." In summary, Thompson asserts that the trial court's sentence was "unduly excessive, extremely vindictive and manifestly unreasonable." Appellant's Brief, at 14-15.

We have previously stated that a challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question. *See Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005). However, our Court has recognized that a consecutive sentence can be so excessive that it may create a substantial question. *See Commonwealth*

- 14 -

*v. Moury*, 992 A.2d at 171-72. In determining whether a substantial question has been raised, our focus is on "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in the case." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa. Super. 2010) (footnote omitted).

Thomspon was convicted of the first-degree murder of Tamara Cornelius and, in relation to the death of Tamara Cornelius' unborn child, with Murder of an Unborn Child. The court was required to impose a life sentence on these charges. The court then imposed an aggregate term of 18½ to 37 years' incarceration for the non-murder charges, to be run consecutive to the life sentences. Although a consecutive sentence to a life sentence may seem unnecessary on the surface, it is not manifestly excessive in light of the crimes Thompson committed. We cannot conclude the aggregate sentence was excessive when compared to Thompson's criminal conduct. As such, Thompson's challenge to the consecutive nature of his sentence does not raise a substantial question. ***See Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 599 (Pa. Super. 2010).

In any event, assuming, *arguendo,* that Thompson had presented a substantial question, thus permitting our review,[4] we note the trial court heard, considered, and made reference to the sentencing guidelines, the sentencing code, the written submission of counsel, the victim impact statements, as well as the trial testimony from both the penalty and the guilt phase of the trial. The trial court noted the testimony of Thompson's mother and sister, as well as the expert that Thompson presented at the sentencing hearing. Following consideration of all this information, the trial court clearly and intentionally, imposed consecutive sentences:

> What he did to this defenseless woman and this unborn child was cowardly, acts of violence, despicable acts of violence, and it certainly merits a consecutive sentence in my view for many reasons, but one reason is to make a statement that to anybody who might be considering letting him out of prison in the future, that that would be a terrible misdeed. It would be wrong.
>
> The sentence I impose is appropriate give his character and background. As Mr. Steele has outlined extensively, he is a dangerous person, dangerous to the community. The impact of his crimes on the victim's family and on our society is immeasurable. He does not follow the rules. He has extensive criminal history. He's been to prison, federally, state prison, county prison. Commitment to an institution for life is clearly appropriate here, and I will sentence him accordingly.

N.T., Sentencing, 9/19/23, at 22-23.

_____

[4] On appeal, Thompson focuses on the excessive weight given by the trial court to the nature and circumstances of the crimes; that the trial court failed to adequately consider his life history and rehabilitative needs; and failed to give adequate consideration to the witnesses he presented at sentencing.

Our review leads us to disagree with Thompson that the trial court abused its discretion in formulating the consecutive sentences. Thus, even if we reached the merits of the issue, we would find the trial court did not abuse its discretion. *See Commonwealth v. Downing*, 990 A.2d 788, 792–93 (Pa. Super. 2010) ("Sentencing is vested in the discretion of the trial court and will not be disturbed absent a manifest abuse of that discretion.") (citation omitted).

As we find neither of Thompson's issues merits relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2024